Digna BALLENILLA–GONZALEZ,
Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 241, Docket 76–4130.

United States Court of Appeals,
Second Circuit.

Argued Oct. 12, 1976.

Decided Dec. 10, 1976.

---

Robert S. Catz, Ellen Sudow (law student), with whom Kathryn Dahl (law student), Urban Law Institute of the Antioch School of Law, Washington, D. C., Joanne M. Minor, Waterbury Legal Aid, Waterbury, Conn. (Bill Walsh, Claudia Ribet, Adrien H. Zubrin, Christopher Bell, Waterbury, Conn., of counsel), were on the brief for petitioner.

Robert S. Groban, Jr., Sp. Asst. U. S. Atty. (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Richard J. McCarthy, Asst. U. S. Atty., New York City, of counsel), for respondent.

Before KAUFMAN, Chief Judge, and MOORE and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Petitioner overstayed her nonimmigrant student visa and was ordered deported by a Special Inquiry Officer of the Immigration and Naturalization Service ("INS") on the basis of her admission of deportability. The Board of Immigration Appeals affirmed the finding that she had overstayed her visa, but granted her permission to depart voluntarily in lieu of deportation. Instead of leaving the country, petitioner brought this appeal, contending that the Special Inquiry Officer and the INS had deprived her of her constitutional and statutory rights to counsel, that the findings of the Special Inquiry Officer were arbitrary and capricious, and that the Board had unconstitutionally deprived her of her statutory right to appeal by requiring that she choose between appeal and voluntary departure. Finding no merit to her contentions, we deny the petition for review.

Petitioner, a citizen of the Dominican Republic, entered Puerto Rico under a nonimmigrant student visa for the purpose of attending tenth grade at Antillian College, a private religious high school in Puerto Rico. Her visa was due to expire May 30, 1974, when the school term ended. Over Christmas vacation, she went back to the Dominican Republic and became pregnant.

Returning to Puerto Rico she did not go back to the Dominican Republic at the end of the school term but instead went to visit relatives in Waterbury, Connecticut, where her child was born on September 15, 1974.

On October 8, believing herself entitled to stay in the United States as a result of the birth of her child there, petitioner went to the INS to apply for permanent residence. She was referred to a deportation investigator who, after advising her that she had the right to remain silent and the right to have a lawyer present, asked her when she had entered the United States, when her visa had expired, and whether she had requested permission to remain beyond the original expiration date. Although her answers were somewhat confused,[1] they provided the INS with the basis for its institution of deportation hearings, which were commenced by sending her an Order to Show Cause and Notice of Hearing written in English.

On November 18, 1974, petitioner appeared at the hearing as scheduled. Neither she nor the Service was represented by counsel. The Special Inquiry Officer told her that the hearing was a deportation hearing and asked her whether she wanted a lawyer. After a certain amount of indecision, she decided that she would not need one.[2] Because it appeared that petitioner

---

1. The relevant portion of the record of petitioner's sworn statement from that interview reads as follows:

    "Q. Where and when were you born and of what country are you a citizen?
    A. May 5, 1950, at Santo Domingo, Dominican Republic, and I am a citizen of the Dominican Republic.

    .    .    .    .    .

    Q. Where and when did you last enter the United States?
    A. January 8, 1974, at San Juan.
    Q. At that time, you received permission to remain in the United States until May 30, 1974. Is that correct?
    A. Yes.
    Q. Did you apply for or receive permission from the United States Immigration to remain in the United States beyond May 30, 1974?
    A. I did not ask, and I was pregnant, and then the doctor sent a letter saying that I should not travel and from here the doctor got an answer that it was all right."

2. The relevant portion of the hearing transcript reads as follows:

    "Q. This hearing is to determine whether you shall be deported from the United States. At this hearing you will have an opportunity to show why you should not be deported. Do you understand?
    A. Yes.
    Q. You have a right to be represented here, if you wish, by an attorney or representative of your own choice and without expense to the United States government. Do you wish to have a lawyer or representative here, or do you wish to speak without a lawyer or representative?
    A. Will there be a problem? I don't know.
    Q. Well, as I told you, I'm going to decide whether you should be deported and you have an opportunity to show why you should not be deported or why you should be allowed to leave voluntarily or not deported, and at the end of the hearing I will decide what is to be done. It may be that you be

did not fully understand the Order to Show Cause, the Special Inquiry Officer had it explained to her in Spanish. Pleading to the allegations of the Order to Show Cause, petitioner then admitted that she was not a citizen, that she had stayed beyond the May 30, 1974, expiration date of her visa without INS authority, and that she was deportable.[3] Since under INS regulations such admissions constitute a sufficient basis for a finding of deportability, the Special Inquiry Officer then turned to the question of whether petitioner would rather be deported or leave voluntarily. When she stated that she did not have the funds needed for voluntary departure, the Officer ordered her deported. He further informed her that she had the right to appeal to the Board and that if she wanted help with the appeal she could turn to the Waterbury Legal Aid Society, which she did.

With the help of the Legal Aid Society petitioner filed an affidavit with the Board on July 5, 1975, in which she stated that before leaving Puerto Rico for Waterbury, she had talked to one Monica de Lescay, who was in charge of immigration affairs for Antillian College, that de Lescay had said that she would take care of all of the forms necessary for an extension of petitioner's visa, and that petitioner was under the impression that everything had been taken care of by the school, so that she had permission to remain until September 1974. She further stated that while in Waterbury, where she received prenatal care, she was told that because of her pregnancy she would not be able to go back to the Dominican Republic in September, that the hospital would send a letter to the INS so stating, and that the letter had in fact been sent.[4] She was therefore under the impression that she had been granted permission to remain because of her inability to travel.

The affidavit further stated that as soon as her child was born, petitioner went to

3. The relevant portion of the transcript reads as follows:

"Q. Do you understand this charge that you are deportable because you were admitted to the United States as a student for a limited time and you have remained without authority for longer than that time?

A. I was going to ask the school for more time here and that they have to accept a letter and then they told me that it was alright.

Q. Do you understand the charge? We will come to a discussion about that in due course. Do you understand what the charge is in this paper?

A. Yes.

Q. The Order to Show Cause states first you are not a citizen or national of the United States and second you are a native of the Dominican Republic and a citizen of the Dominican Republic. Are those statements true?

A. Yes.

Q. Third, you entered the United States at San Juan, Puerto Rico on or about January 8, 1974 and fourth, at that time you were admitted as a student and were authorized to remain in the United States in that status until May 30, 1974. Are those statements true?

A. Yes.

Q. And fifth, you have remained in the United States beyond May 30, 1974 without authority of the United States Immigration and Naturalization Service. Is that true?

A. Yes.

Q. It is charged that because of these facts you are subject to being deported under the provisions of Section 241(a)(2) of the Immigration and Nationality Act in that, after admission as a nonimmigrant under Section 101(a)(15) in said act you have remained in the United States for a longer time than permitted. As I have told you, more simply stated the charge is: you are deportable because you were admitted into the United States for a limited time as a student and you have remained without permission for longer than that time. Do you admit that you are deportable on this charge or do you deny that you are deportable on this charge?

A. I admit it."

The relevant portion of the transcript in footnote 3 continues:

"deported, it may be that you get some relief from deportation and be found to be not deportable. Now, it's up to you as to whether you wish to have a representative here at the hearing. What do you wish to do?

A. Would it be better to have a lawyer?

Q. Well I don't know what your case is. Now if you wish to have time to think it over we'll recess the hearing while you determine what you want to do.

A. I don't think there will be any problem. I don't think I need a lawyer."

4. The letter, showing that it had been mailed on August 19, 1974, was attached to the affidavit.

the INS to apply for permanent resident status, being under the impression that her American child gave her the right to do so, and stated that on November 18, 1974, she went to the INS, believing that the appointment was to fill out residency papers, and that she did not then believe she needed a lawyer because she "did not think that there was any problem with my staying." After the interrogation was completed, the affidavit stated, she went to the Waterbury Legal Aid Society, where she was told that the paper given to her by the INS was a deportation order and that the hearing had been a deportation hearing. Petitioner's affidavit stated that had she known she was in danger of being deported, she would have asked for a lawyer and, not being able to afford one, would have gotten help from the Waterbury Legal Aid Society.

On July 25, 1975, still waiting for the Board to hear her appeal, petitioner married an American citizen, who filed a petition to have her reclassified and for an immigrant visa. No action was taken on the spouse's petition prior to the Board's decision.[5]

The Board heard the appeal on September 24, 1975. Petitioner sought a rehearing before the immigration judge, this time with counsel. She argued that there remained unresolved questions as to whether she had submitted the appropriate documentation to allow her to stay beyond May 30, 1974, whether the INS had disposed of

any such application properly, and whether the INS did not have an affirmative duty to investigate the merits of her application for permanent resident status instead of starting deportation proceedings immediately. The Board denied a rehearing, holding that petitioner had not been deprived of the right to counsel at the hearing and that she had shown no prejudice from lack of counsel. Since petitioner had sufficient funds she was granted 30 days in which to depart voluntarily, but if she failed to do so the Board's order was to constitute an order to depart. After allowing the permission for voluntary departure to lapse, petitioner brought this appeal.

## DISCUSSION

■ Turning first to petitioner's contention that the Board's order was arbitrary and capricious, § 242.16 of the Code of Federal Regulations ("CFR"), Title 8, states that if, after the special inquiry officer advises a potential deportee of her rights and of the charges against her,[6] she, in response to questions, admits (as petitioner did here) the factual allegations of the order to show cause and admits deportability, and "the special inquiry officer is satisfied that no issues of law or fact remain," then the officer may determine that deportability has been established.[7] We do not believe that a decision based on such admissions is arbitrary or capricious under relevant statutory and regulatory standards.[8]

---

5. Petitioner's husband left for Puerto Rico before a hearing on his petition could be held. The current status of his petition is unclear.

6. 8 C.F.R. § 242.16(a) provides in relevant part: "The special inquiry officer shall advise the respondent of his right to representation, at no expense to the Government, by counsel of his own choice authorized to practice in the proceedings and require him to state then and there whether he desires representation; advise the respondent that he will have a reasonable opportunity to examine and object to the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the government; place the respondent under oath; read the factual allegations and the charges in the order to show cause to the respondent and explain them in nontechnical language, and

enter the order to show cause as an exhibit in the record. . . . ."

7. 8 C.F.R. § 242.16(b) provides in relevant part: "The special inquiry officer shall require the respondent to plead to the order to show cause by stating whether he admits or denies the factual allegations and his deportability under the charges contained therein. If the respondent admits the factual allegations and admits his deportability under the charges and the special inquiry officer is satisfied that no issues of law or fact remain, the special inquiry officer may determine that deportability as charged has been established by the admissions of the respondent."

8. "[N]o decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence," 8 U.S.C. § 1252(b)(4),

Petitioner argues, however, that because she has disavowed those pleadings by affidavit and stated facts which might bring into question the validity of those pleadings, the decision has nevertheless thereby been rendered arbitrary and capricious. As is clear from the relevant provisions of CFR, however, a motion for rehearing, whether presented to the Board, as it was here, or to the Special Inquiry Officer, must state the new facts to be proved at the reopened hearing.[9] Implicit in this requirement is the assumption that no such motion will be granted unless the facts alleged would be sufficient, if proved, to change the result. Here, even assuming all of the allegations and suppositions in petitioner's affidavit to be true, she still would not have had permission to remain in this country beyond the birth of her child on September 15, 1974, and thus still would have been deportable at the time of her hearing on November 18, 1974. Under the circumstances, we cannot take issue with the Board's refusal to order a rehearing on the basis of petitioner's new factual allegations. We therefore hold that the Special Inquiry Officer's finding of deportability, as affirmed by the Board, was neither arbitrary nor capricious.

Petitioner argues that in any event she is entitled to a rehearing because at the original hearing she was deprived of a constitutional right to appointed counsel, which she claims as a matter of equal protection and due process under the Fifth Amendment, and of her statutory right to counsel at no expense to the government pursuant to 8 U.S.C. § 1252(b)(2) and 8 C.F.R. § 242.10.

To reach the question of the extent of petitioner's statutory and constitutional rights to counsel, however, we would have to find that she did not herself waive any such rights. This we cannot do. As required by 8 C.F.R. § 242.16, the Special Inquiry Officer informed petitioner of her right to counsel at no expense to the government and asked her whether she wished to proceed with or without a lawyer. Petitioner was undecided but, believing that she could not be deported since she had given birth to an American child, ultimately decided that she would proceed without one. Thus she clearly waived any right to a lawyer, albeit on a mistaken impression of the law. We are not prepared to state that every waiver of a right to counsel given under a misapprehension of the state of the law must be upheld as valid. However, where (as here) a potential deportee, after obtaining qualified legal counsel, fails even to allege facts which could, had an attorney been available to aid in their proof, have changed the outcome of the hearing, such a waiver will be deemed effective.[10] It is significant that her Legal Aid counsel, after reviewing the case, apparently concluded that no relevant new information could be adduced that might establish a right to remain in the United States. Being unable to show any prejudice by reason of her lack of counsel at the hearing, he accordingly did not move to reopen the hearing but chose instead to appeal to the Board, seeking relief based on mitigating circumstances and alleged denial of due process at the deportation hearing. For this reason we need not reach the constitutional and statutory questions petitioner attempts to raise.

or on "clear, unequivocal and convincing evidence." 8 C.F.R. § 242.14(a).

9. See 8 C.F.R. § 242.22; 8 C.F.R. § 103.5; 8 C.F.R. § 3.2.

10. The INS argues that this case should be governed by *Henriques v. Immigration and Naturalization Service,* 465 F.2d 119 (2d Cir. 1972) (per curiam), *cert. denied,* 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703, (1973), where we held that, absent a showing of prejudice, we would not reach the question of whether potential deportees have a constitutional right to counsel at government expense. Whether the same standard would apply in a case of denial of a potential deportee's statutory right to retained counsel, see *Castaneda-Delgado v. Immigration and Naturalization Service,* 525 F.2d 1295 (7th Cir. 1975), we need not decide. What we hold here is much narrower: where a potential deportee has waived her right to retained counsel under a misapprehension of the law, has admitted the allegations of the INS and has not effectively disavowed her admissions, no rehearing with counsel is warranted.

■ Finally petitioner argues that the Board, by giving her only 30 days within which to depart voluntarily at no expense to the government, placed an unconstitutional burden upon her exercise of her statutory right to obtain judicial review, see 8 U.S.C. § 1105a, since a petition for review could not be prepared, briefed, heard and decided within that period and, if she departed the United States, she would no longer be entitled to judicial review, see *Burrafato v. United States Department of State,* 523 F.2d 554 (2d Cir.), *cert. denied,* 423 U.S. 920, 96 S.Ct. 259, 46 L.Ed.2d 246 (1975). The effect of the 30-day limitation, petitioner argues, was therefore to deny her due process by chilling her exercise of her right to appeal. We disagree.

■ Voluntary departure in lieu of deportation is not something which a deportee is entitled to as a matter of right. It rests within the Attorney General's sound discretion, see 8 U.S.C. § 1254(e), 8 C.F.R. § 244.-1–2. Of course this discretion should not be used by the Board to insulate its decisions and procedures from constitutional or statutory challenge. If an alien has a facially meritorious claim going to the validity of a deportation order, he or she should not be discouraged from seeking review by the offer of voluntary departure on terms that will evaporate if the appeal is pursued. The result would be to penalize an alien in the bona fide, non-frivolous exercise of a constitutional right.

On the other hand, our government should not be forced to tolerate the practice, all too frequently adopted by aliens once they become subject to a deportation order, of using the federal courts in a seemingly endless series of meritless or dilatory tactics designed to stall their departure from the country as long as possible. As we have recently observed, see *Acevedo v. I.N.S.,* 538 F.2d 918 (2d Cir. 1976), these efforts are frequently so frivolous as to constitute a misuse of civil process. In such cases, as we noted in *Fan Wan Keung v. Immigration and Naturalization Service,* 434 F.2d 301, 304–05 (2d Cir. 1970), quoting with approval the unreported decision of the Board of Immigration Appeals in *Wong Ching Fui,* dated August 21, 1969:

"The purpose of authorizing voluntary departure in lieu of deportation is to effect the alien's prompt departure without further trouble to the Service. Both the aliens and the Service benefit thereby. But if the alien does not depart promptly, so that the Service becomes involved in further and most costly procedures by his attempts to continue his illegal stay here, the original benefit to the Service is lost. And if, after years of delay, he is again rewarded with the opportunity for voluntary departure which he has previously spurned, what incentive is there for any alien similarly circumstanced to depart promptly when first given the opportunity?"

In *Fan Wan Keung* we held that the Service's refusal to grant a second permission voluntarily to depart after the alien had engaged in dilatory tactics to delay deportation was not an abuse of discretion.

Applying these principles here, the various interesting constitutional issues which petitioner would now like to raise are precluded by the record, which demonstrates that she received a fair hearing, waived her right to counsel and was not prejudiced by her waiver since the undisputed facts point to but one conclusion, that she was clearly deportable. At no time has she or her counsel ever made an offer to prove any facts indicating that she had a right to remain. Thus her appeal was unquestionably meritless. Furthermore, upon applying to the Board for the right of voluntary departure in lieu of deportation neither she nor her counsel expressed any intention to seek review. They did not seek from the Board an extension of her departure date, see 8 C.F.R. § 244.2. Nor did they follow the procedure of filing a petition for review within the 30-day period fixed by the Board for voluntary departure and requesting us for a stay of the Board's order pending appeal. These procedures enable the Board or this court, in cases where a prima facie meritorious basis for appeal is shown, to permit its being pursued without prejudice to voluntary departure.

In short, instead of facing the undisputed facts of her situation, her counsel sought to raise constitutional issues without any meritorious factual basis. Such maneuvers do not entitle her as a matter of right to another chance at voluntary departure. On the other hand, it may be said in her favor that, despite the meritlessness of her cause, she has moved expeditiously and in apparent good faith in appealing from the Special Inquiry Officer to the Board and from the Board to this court. Moreover, she is now married to an American citizen, her child is a U.S. citizen by virtue of its birth here, and her husband has filed a petition, presumably still pending, for her reclassification and for the issuance to her of an immigrant visa. In view of these circumstances, although we deny her application for reinstatement of her right to voluntary departure, we do so without prejudice to the Board's exercise of its authority, see 8 C.F.R. § 244.2, to reinstate and extend the time within which she may depart voluntarily.