United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 28, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

—————————

No. 04-61100

—————————

SERGIO BANDA-ORTIZ,

Petitioner,

versus

ALBERTO R GONZALES, U S ATTORNEY GENERAL,

Respondent.

Petition for Review of a Final Order of Removal Entered by the
Board of Immigration Appeals

Before JOLLY, SMITH, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Sergio Banda-Ortiz petitions for review of an order of the Board of Immigration Appeals

("BIA") finding him statutorily ineligible for cancellation of removal.

I

Banda-Ortiz, a citizen of Mexico, entered the United States in 1989. In March 2000, the

former Immigration and Naturalization Service ("INS") issued a Notice to Appear, charging him with

removability under 8 U.S.C. § 1182(a)(6)(A)(I) as being present in the United States without being

admitted or paroled. Banda-Ortiz conceded removability but applied for cancellation of removal, claiming that his departure would impose "exceptional and extremely unusual hardship," *see* 8 U.S.C. § 1229b(b)(1)(D), on his older son and adoptive parents, and in the alternative for voluntary departure. As a prerequisite to being granted voluntary departure, Banda-Ortiz was required to, *inter alia*, establish by clear and convincing evidence that he had the means and intent to depart from the United States. 8 U.S.C. § 1229c(b)(1)(D). The immigration judge ("IJ") denied cancellation of removal and granted Banda-Ortiz's request for voluntary departure.

Banda-Ortiz filed an appeal with the BIA. On August 22, 2002, the BIA affirmed and granted him thirty days to depart voluntarily.[1] Rather than departing, Banda-Ortiz moved to reopen his removal proceedings to introduce new evidence of hardship to his family that would result from his departure.[2] He did not accompany this motion with a request to stay removal, to toll the voluntary departure period, or to reinstate the voluntary departure period. The BIA nevertheless granted the motion to reopen and remanded to the IJ for consideration of Banda-Ortiz's new evidence in support of his application for cancellation of removal.

After a hearing, however, the IJ held that Banda-Ortiz was ineligible to apply for cancellation

---

[1] As required by 8 U.S.C. § 1229c(d)(3), the BIA's decision concluded with the following notice:

> If the alien fails to depart the United States within the time period specified, or any extensions granted by the district director, the alien shall be subject to a civil penalty of not less than $1,000 and not more than $5,000, and shall be ineligible for a period of 10 years for any further relief under section 240B and sections 240A, 245, 248, and 249 of the Immigration and Nationality Act. *See* section 240B(d) of the Act.

[2] *See* 8 U.S.C. § 1229a(c)(7) (permitting an alien to file one motion to reopen). Although Banda-Ortiz filed his motion on September 23, 2002, two days after his voluntary departure period expired, the INS granted a two-day *nunc pro tunc* extension, thereby rendering the motion timely.

of removal pursuant to 8 U.S.C. § 1229c(d) (providing that an alien who fails to depart voluntarily as scheduled is ineligible for cancellation of removal) because even though he had filed his motion to reopen prior to the expiration of the voluntary departure period, he had failed to depart timely while that motion was pending. The BIA affirmed. It agreed that 8 U.S.C. § 1229c(d) rendered Banda-Ortiz ineligible for cancellation of removal, rejected Banda-Ortiz's argument that filing a motion to reopen tolls the voluntary departure period, and held that it (the BIA) had erred in initially granting the motion to reopen.

II

We have jurisdiction to review the BIA's denial of a motion to reopen under 8 U.S.C. § 1252. *Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005). We review for an abuse of discretion. *Id.*

This case concerns the interaction of several statutory provisions and an administrative regulation concerning voluntary departure and motions to reopen. With respect to voluntary departure, 8 U.S.C. § 1229c(a)(1) allows the Attorney General to permit an alien to voluntarily depart the United States at the alien's expense. "Permission to depart voluntarily under this subsection shall not be valid for a period exceeding 60 days." 8 U.S.C. § 1229c(b)(2). To ensure that aliens abide by their obligation to voluntarily depart, 8 U.S.C. § 1229c(d) provides:

> If an alien is permitted to depart voluntarily under this section and fails voluntarily to depart the United States within the time period specified, the alien
> (A) shall be subject to a civil penalty of not less than $1,000 and not more than $5,000; and
> (B) shall be ineligible, for a period of 10 years, to receive [cancellation of removal].

The statute concerning motions to reopen states, "An alien may file one motion to reopen proceedings." 8 U.S.C. § 1229a(c)(6)(A) . That motion must be filed within ninety days of the date of the final administrative order. 8 U.S.C. § 1229a(c)(6)(C)(i). Finally, 8 C.F.R. § 1003.2(d), provides that "[a]ny departure from the United States, including the deportation or removal of a

3

person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion."

The BIA held that because he had overstayed his voluntary departure date, Banda-Ortiz was in violation of 8 U.S.C. § 1229c(d) and was ineligible for cancellation of removal. Despite the clarity with which the statute speaks and his undisputed failure to depart timely, Banda-Ortiz argues that he is eligible for cancellation of removal. He contends that the BIA is required to toll automatically the voluntary departure period during the pendency of a motion to reopen. According to Banda-Ortiz, the statute and regulation placed him in an "impossible situation" because, if he complied with the voluntary departure order and left the country, his motion to reopen would be deemed withdrawn pursuant to 8 C.F.R. § 1003.2(d). If he stayed, 8 U.S.C. § 1229c(d) would render him ineligible for cancellation of removal.

In support of his argument, Banda-Ortiz relies on the Ninth Circuit's decision in *Azarte v. Ashcroft,* 394 F.3d 1278 (9th Cir. 2005). The *Azarte* court noted that the BIA's reasonable interpretation of the immigration statutes are entitled to deference, as provided by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984). *Id.* at 1285. The *Azarte* court nevertheless declined to defer to the BIA's interpretation, holding instead that it would be absurd for Congress to provide an alien who elects voluntary departure with the right to file a motion to reopen when that motion would, in the vast majority of cases, be deemed withdrawn when the alien complies with the voluntary departure order. *Id.* at 1288-89 (describing this result as "nonsensical"). *See also Kanivets v. Gonzales*, 424 F.3d 330 (3d Cir. 2005) (agreeing with *Azarte*); *Sidikhouya v. Gonzales*, 407 F.3d 950 (8th Cir. 2005) (same). We disagree.

Voluntary departure is the result of an agreed-upon exchange of benefits between an alien and

4

the Government. It is not granted "unless the alien requests such voluntary departure and agrees to its terms and conditions." 8 C.F.R. § 240.25(c). By requesting voluntary departure, an alien represents that he has the intent to leave the country within the specified time period. 8 U.S.C. § 1229c(b)(1)(D). Banda-Ortiz made this representation to the IJ but failed to depart. As a result, he gained access to the numerous benefits that voluntary departure provides, including:1) the ability to choose his own destination point; 2) the opportunity to put his affairs in order without fear of being taken into custody; 3) freedom from extended detention while the government prepares for his removal; 4) avoidance of the stigma of forced removal; and 5) continued eligibility for an adjustment of status. *Lopez-Chavez v. Ashcroft*, 383 F.3d 650, 651 (7th Cir. 2004). Voluntary departure is not, however, without cost to the alien. As noted, it exposes him to civil fines and renders him ineligible for certain forms of relief if he does not timely depart. 8 U.S.C. § 1229c(d).

The statutory scheme "reveals Congress' intention to offer an alien a specific benefit⟩⟩exemption from the ordinary bars on subsequent relief⟩⟩in return for a quick departure at no cost to the government." *Ngarurih v. Ashcroft,* 371 F.3d 182, 194 (4th Cir. 2004). The purpose of voluntary departure is to provide an incentive to aliens "to depart without requiring the agency and courts to devote resources to the matter." *Alimi v. Ashcroft*, 391 F.3d 888, 892 (7th Cir. 2004) (holding that stay of removal does not automatically toll voluntary departure date). "But if the alien does not depart promptly, so that the [Government] becomes involved in further and more costly procedures by his attempts to continue his illegal stay here, the original benefit to the [Government] is lost." *Ballenilla-Gonzalez v. INS*, 546 F.2d 515, 521 (2d Cir. 1976). What Banda-Ortiz seeks is "the opportunity to litigate to the last without bearing the attendant costs [and] the chance of winning outright, plus benefits the law offers to those who avoid litigation through voluntary departure."

5

*Alimi*, 391 F.3d at 892.

Furthermore, the remedy Banda-Ortiz seeks is in tension with, if not opposed to, limits on the length of and authority to extend voluntary departure. First, 8 U.S.C. § 1229c(b)(2) provides, "Permission to depart voluntarily under this subsection shall not be valid for a period exceeding 60 days." *See also* 8 C.F.R. § 1240.26(f) ("In no event can the total period of time, including any extension, exceed . . . 60 days as set forth in [8 U.S.C. § 1229c(b)(2)].). Automatic tolling would effectively extend the validity of his voluntary departure period well beyond the sixty days that Congress has authorized. Second, a judicial extension of the period of voluntary departure is arguably contrary to 8 C.F.R. § 1240.26(f), which states, "Authority to extend the time in which to depart voluntarily specified initially by an immigration judge or the Board is only within the jurisdiction of the district director, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs."[3]

Banda-Ortiz disputes this conclusion because Congress authorized aliens to file a motion to

_____

[3] *See Ngarurih,* 371 F.3d at 194 (holding that court of appeals may not toll voluntary departure period during judicial review); *Reynoso-Lopez v. Ashcroft*, 369 F.3d 275, 280 (3d Cir. 2004) ("[U]nder IIRIRA, the executive branch, not the judiciary, is given the sole authority to determine when an alien must depart."); *Garcia v. Ashcroft*, 368 F.3d 1157, 1159 (9th Cir. 2004) (holding that court of appeals lacks authority to grant a motion for a stay of the voluntary departure period filed after that period has expired); *Zazueta-Carillo v. Ashcroft*, 322 F.3d 1166, 1172-73 (9th Cir. 2003) ("It is executive rather than judicial officers who decide when an alien must depart. Neither the statute nor the regulations give courts any designated role in this process of setting the deadline for departure. . . . For us to specify in effect a different period starting more than a year later would contravene Congress's scheme and invade the executive branch's authority to specify a deadline for voluntary departure."). *But see Barroso v. Gonzales*, 429 F.3d 1195, 1206 (9th Cir. 2005) (holding that "tolling" the voluntary departure period does not "extend" it, but instead merely stops its running); *Lopez-Chavez v. Ashcroft*, 383 F.3d 650, 653 (7th Cir. 2004) (holding that 8 C.F.R. § 1240.26(f) only limits executive officials); *Khalil v. Ashcroft*, 370 F.3d 176, 181 (1st Cir. 2004) (same).

reopen, 8 U.S.C. § 1229a(c)(7), and did not exclude aliens who elect voluntary departure from its application. The BIA has reasonably interpreted the governing statutes in light of the purposes of the voluntary departure scheme to permit the filing and resolution of a motion to reopen, so long as it does not interfere with the agreed upon voluntary departure date or the Government's interest in the finality of an alien's voluntary departure. Banda-Ortiz's interpretation, on the other hand, permits an alien to request voluntary departure, exhaust his administrative appeals, move to reopen the removal proceedings, and overstay the period of voluntary departure, thereby depriving the government of a speedy departure. "This is as if the accused in a criminal prosecution demanded not only the chance of acquittal at trial but also the benefits that go with a guilty plea and the acceptance of responsibility." *Alimi*, 391 F.3d at 892. Accordingly, we decline to read into 8 U.S.C. § 1129c(d) the requirement that the BIA automatically toll an alien's voluntary departure period during the pendency of a motion to reopen.

III

For the foregoing reasons, we DENY the petition for review.

7

JERRY E. SMITH, Circuit Judge, dissenting:

The panel majority today unnecessarily creates a circuit split on an important issue of immigration law and ensures that a sizable number of aliens facing departure will be effectively unable to avail themselves of the statutory right to file one good-faith motion to reopen, regardless of the merit of their underlying claims. Because Congress could not possibly have intended this result, I respectfully dissent.

I.

We are the fourth circuit to consider this precise question: Does a timely filed motion to reopen toll an alien's voluntary departure period?[1] We are the first to answer in the negative. Normally "we begin with trepidation in the face of the solid array of . . . federal courts of appeals" that have reached the same conclusion, because "[w]e are always chary to create a circuit split." *Alfaro v. Comm'r*, 349 F.3d 225, 229 (5th Cir. 2003). Here, however, the reasons offered by the majority cannot overcome the "high hurdle" of preserving the uniformity of the circuits. *See id.* at 230.

The majority relies on two principal arguments: first, that it is sensible for aliens who receive the benefits of voluntary departure to incur the costs associated with not leaving the country in a timely fashion, and second, that courts have no authority to extend the voluntary departure period

---

[1] *See Kanivets v. Gonzales*, 424 F.3d 330 (3d Cir. 2005); *Sidikhouya v. Gonzales*, 407 F.3d 950 (8th Cir. 2005); *Azarte v. Ashcroft*, 394 F.3d 1278 (9th Cir. 2005). *See also Barroso v. Gonzales*, 429 F.3d 1195, 1207 (9th Cir. 2005) (holding that tolling occurs even if alien fails to file a separate motion to stay removal).

beyond the sixty days authorized by statute.[2] The majority errs by searching for Congress's intent almost exclusively in the set of provisions governing voluntary departure to the detriment of the provisions concerning motions to reopen.

In *Azarte*, the Ninth Circuit exhaustively studied the history of motions to reopen and voluntary departure, including the 1996 codification of both rights in the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), and concluded that tolling was necessary to "avoid creating an incompatibility in the statutory scheme, to implement a workable procedure for motions to reopen in cases in which aliens are granted voluntary departure, and to effectuate the purposes of the two statutory provisions." *Azarte*, 394 F.3d at 1289. In particular, before codifying 8 U.S.C. § 1229a(c)(7), which governs motions to reopen, Congress directed the Attorney General to conduct a study on perceived abuses of these motions, and ultimately concluded that the proper way to curb abuse was (1) to limit aliens to one motion to reopen, (2) to require evidence of the factual basis for reopening, and (3) to limit to ninety days the time for filing a motion to reopen.[3]

In sum, Congress addressed the problem of proliferating motions to reopen by regulating their quantity, quality, and timeliness. Nowhere, however, did Congress suggest that an alien's traditional right to file a motion to reopen depends on the nature of the order of removal. In fact, § 1229a(c)(7)(C)(i) specifically declines to adopt this limitation, stating only that the motion to reopen shall be filed within ninety days of "*a* final administrative order of removal" (emphasis added),

---

[2] *See* 8 U.S.C § 1229c(b)(2); 8 C.F.R. § 1240.26(f).

[3] *See Azarte*, 394 F.3d at 1283-84; 8 U.S.C. § 1229a(c)(7)(A) ("An alien may file one motion to reopen proceedings under this section[.]"); § 1229a(c)(7)(B) ("The motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material."); § 1229a(c)(7)(C)(i) ("[T]he motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal.").

9

which includes in its terms an order granting voluntary departure.

I do not quarrel with the general proposition that voluntary departure represents a bargain struck between an alien and the government. *See* 8 C.F.R. § 240.25(c). I object, however, to limiting our search for the terms of that bargain to statutory provisions conferring benefits on only one of the parties.[4] To be sure, IIRIRA "drastically limited" the amount of time available for voluntary departure. *See Azarte*, 394 F.3d at 1285. The *Azarte* court, however, correctly refused to read the departure statute in isolation:

> [V]oluntary departure and motions to reopen both are the subject of a long, unin-terrupted, historic practice in immigration law . . . We find absurd the proposition that Congress, while expressly codifying the tradition of motions to reopen, intended *sub silentio* to preclude their availability in a significant number of cases, likely a substantial majority.

*Azarte*, 394 F.3d at 1289.

Rather than adopt this more sensible analysis, the panel majority imposes a Hobson's choice on aliens facing removal. "Any departure from the United States, including the deportation or re-moval of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion." 8 C.F.R. § 1003.2(d). Under this section, an alien subject to forcible removal will auto-matically forfeit his motion to reopen once deported. Should he attempt to avoid this result by ap-plying for voluntary departure, however, he will still forfeit his motion, under the court's analysis, if he remains in the country past his departure date (which will often come too soon for the agency to

---

[4] *See United States v. Caldera-Herrera*, 930 F.2d 409, 411 (5th Cir. 1991) (stating that "statutes must be read in harmony with one another so as to give meaning to each provision").

10

consider his motion on the merits).[5] If, on the other hand, he complies with the departure order by leaving the country, his leaving would again constitute withdrawal under § 1003.2(d).

It makes little sense why Congress would codify a right to file a motion to reopen "within 90 days of the date of entry of a final administrative order of removal," § 1229a(c)(7)(C)(i), if, in a substantial number of cases, the order of removal itself would result in forfeiture of the motion. The majority's rule puts Banda-Ortiz in the "untenable position of having to choose between two equally undesirable alternatives." *In re Wilson*, 2006 WL 574273, at *5 (5th Cir. Mar. 10, 2006).

The result is particularly harsh when one considers that it operates to disadvantage those aliens whose good behavior has entitled them to the solicitude of the law of voluntary departure. To qualify for voluntary departure, one must show, *inter alia*, good moral character for at least five years before applying, and must not be removable for reason of aggravated felony conviction or for security-related reasons. 8 U.S.C. § 1229c(b)(1). Banda-Ortiz, for example, is employed, has never been convicted of a crime, and has two children who are United States citizens. While his removal proceedings were pending on appeal to the BIA, his younger son was born and was diagnosed with reactive airway disease and chronic allergic rhinitis, which in one doctor's opinion would require constant medical attention not available in Mexico.

The only means Banda-Ortiz had to introduce these facts as evidence of "exceptional and

---

[5] Although the immigration judge ("IJ") has authority to grant up to 60 days' initial departure time after the conclusion of removal proceedings, *see* 8 U.S.C § 1229c(b)(2), the BIA can typically grant only 30 additional days after the termination of an appeal. *See Matter of Chouliaris*, 16 I. & N. Dec. 168, 170 (BIA 1977) (holding that where the IJ initially granted more than 30 days' departure time and that period had expired, "the respondent will be given 30 days from the date of our decision in which to depart voluntarily."). Therefore, even if an alien files a motion to reopen the day the BIA awards voluntary departure, the agency will have at most 30 days to resolve it. This will be unlikely, given the fact that, as of September 30, 2004, there were 33,544 cases pending appeal before the BIA, of which 6,059 had been pending from 2003 or earlier. 2004 EOIR Stat. Y.B. U2.

11

extremely unusual hardship" to the child, 8 U.S.C. § 1229b(b)(1), was a motion to reopen, requesting adjustment of status. This possibility of intervening circumstances is precisely what Congress anticipated when it afforded aliens such as Banda-Ortiz the right to file such a motion.[6]

The panel majority believes it sufficient that its interpretation of the statutes "permit[s] the filing and resolution of a motion to reopen, so long as it does not interfere with the agreed upon voluntary departure date or the Government's interest in the finality of an alien's voluntary departure." But, it cannot accord with due process for the resolution of motions to turn on the happenstance of how quickly an agency can clear its docket during a given thirty-day period.[7] The possibility that two materially similar motions will be treated differently, depending on the extent of administrative backlog at the time of filing, should convince the panel majority that its interpretation leads to absurd results.[8]

Tolling, by contrast, accords with all of Congress's objectives in IIRIRA. It preserves the right of all removable aliens to file a single, good-faith motion to reopen after a final adjudicative order of the BIA. It also allows aliens to seek voluntary departure without fear of surrendering other avenues of procedural relief. Finally, it does no damage to Congress's desire to place reasonable

---

[6] "A motion to reopen seeks fresh consideration on the basis of newly discovered facts or a change in circumstances since the hearing[.]" Charles Gordon, Stanley Mailman, & Stephen Yale-Loehr, 1-3 IMMIGRATION LAW AND PROCEDURE § 3.05[7][a] (2005). I take no position on whether Banda-Ortiz would ultimately prevail on his claim for adjustment of status.

[7] *Cf. Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434-35 (1982) (concluding that state's failure to convene a timely hearing, through no fault of petitioner, violated due process in part because a "system or procedure that deprives persons of their claims in a random manner . . . necessarily presents an unjustifiably high risk that meritorious claims will be terminated").

[8] *See United States v. Female Juvenile*, 103 F.3d 14, 16-17 (5th Cir. 1996) ("Axiomatic in statutory interpretation is the principle that laws should be construed to avoid an absurd or unreasonable result.").

limits on the voluntary departure period: The total time initially allotted for departure (and hence the time available to file to reopen) still cannot exceed sixty days, and limiting claimants to one motion to reopen, supported by evidence of newly-discovered facts, will temper the frequency and duration of tolling.

II.

The panel majority resists this conclusion in part because it believes we lack jurisdiction to toll the voluntary departure period. It cites four cases for this proposition, three of which hail from circuits that have since accepted the position advanced by Banda-Ortiz. *See Reynoso-Lopez*, 369 F.3d at 280; *Zazueta-Carillo*, 322 F.3d at 1172-73); *Garcia*, 368 F.3d at 1159). The remaining case, *Ngarurih*, 371 F.3d at 194, does not require a different result here.

The court in *Ngarurih* held that it lacked authority to reinstate, or in the alternative, stay the voluntary departure period pending appeal. *Id.* at 193-94. The court noted, however, that the "most fundamental[]" reason for holding that it lacked jurisdiction was that, under 8 U.S.C. § 1252, the court could continue to hear the merits of a petition for review even after the alien had left the country. *See id.* at 192-93. Therefore, "an alien may continue to prosecute his appeal of a final order of removal even after he departs the United States, and there is no longer any prospect that the government could manipulate voluntary departure orders to deprive an alien of judicial review." *Id.*

Here, however, the government has offered no similar safeguard to provide that an alien can have his motion to reopen heard on the merits if he leaves the United States. In fact, it is undisputed that, if Banda-Ortiz had left the country pursuant to his voluntary departure order, he would have automatically forfeited his motion under § 1003.2(d). Ngarurih, by contrast, received full considera-

13

tion of his asylum application, notwithstanding that he overstayed his departure period. *Id.* at 188-91.

I would merely ask the court to extend the same courtesy to a petitioner filing a motion to reopen.[9]

The panel majority also believes we cannot toll because tolling contravenes the text of § 1129c(b)(2), which provides that "[p]ermission to depart voluntarily under this subsection shall not be valid for a period exceeding 60 days," and 8 C.F.R. § 1240.26(f), which vests sole jurisdiction "to extend the time in which to depart voluntarily" in specific executive officials. Although I admire the majority's attention to statutory and regulatory text, a strict reading of these provisions proves both too much and too little in this case.

It proves too much because it calls into question a longstanding practice of the agency that the majority cannot intend to assailSSthe tolling of the voluntary departure period pending appeal to the BIA.[10] If the voluntary departure period cannot exceed sixty days under any circumstance, an alien would risk more than a motion to reopen when he elects voluntary departure; he would also put in jeopardy his right to any review of the IJ's decision.[11]

It proves too little because we cannot avoid doing some damage to statutory text in this case,

---

[9] *But see* 8 U.S.C. § 1229c(d)(1)(B) (preventing aliens from receiving certain forms of relief for ten years after overstaying the voluntary departure period, but not including an appeal of an asylum application).

[10] *See Matter of Villegas Aguirre*, 13 I.&N. Dec. 139, 140 (BIA 1969) (holding that a timely appeal "tolls the running of the voluntary departure authorization"); *Matter of Chouliaris*, 16 I.&N. Dec. at 170 (affirming *Aguirre* to the extent that a "grant of voluntary departure made by an immigration judge shall not be jeopardized by taking an appeal"). This practice strongly suggests that tolling does not constitute "exten[tion]" within the meaning of § 1240.26(f).

[11] For example, Banda-Ortiz received 60 days' voluntary departure from the IJ on February 23, 2001 (until April 24). He timely appealed on March 26, which tolled the departure period. The BIA did not release its opinion affirming the IJ's order, and granting 30 additional days for departure, until August 22, 2002, six months after the IJ's decision.

14

because we are faced with conflicting legislative commands. As I have explained, the language of § 1229a(c)(7) is intentionally broad; it does not make exception for aliens subject to voluntary departure and, in fact, it contemplates that any alien facing removal may file a motion to reopen. Therefore, the panel majority's decision carves out an exception to the motion-to-reopen statute that its text cannot bear.

Even if Banda-Ortiz could not muster strong textual arguments, the majority's reading of § 1129c(b)(2) would be unpersuasive. It is not enough to defeat an argument for tolling to point out that tolling would undermine the statutory text. It is in the very *nature* of tolling to suspend the period of time provided by statute for certain actions, when the circumstances of the case require. In fact, the Supreme Court has suggested, at least in the statute of limitations context, that we presume the availability of tolling against the government unless Congress provides otherwise.[12]

Tolling is particularly appropriate in a case like this, where it is necessary to preserve a statutory right and prevent the creation of a legal Scylla and Charybdis that will inevitably lead to the denial of meritorious claims.[13] For these reasons, I would join those circuits that hold that "sus

---

[12] *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990) ("We . . . hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States. Congress, of course, may provide otherwise if it wishes to do so."). Of course, just because tolling is available by statute does not mean that we will ordinarily grant it. *See Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002) (holding that tolling is appropriate in those "rare and exceptional circumstances where it is necessary to preserve a plaintiff's claims when strict application of the statute of limitations would be inequitable") (internal quotations and alteration omitted).

[13] We recently granted tolling for a federal habeas petitioner who waited until the final day of the limitations period to raise a claim under *Atkins v. Virginia*, 536 U.S. 304 (2002), in a successive habeas corpus petition. *See Wilson*, 2006 WL 574273, at *6. The court reasoned that the petitioner was justified in waiting for the court to rule on his initial COA application because he lacked an adequate vehicle for his *Atkins* claim. Because of a Texas procedural rule prohibiting concurrent state

(continued...)

15

pension of a voluntary departure period merely tolls the running of that period; it does not extend it."
*Bocova v. Gonzales*, 412 F.3d 257, 269 (1st Cir. 2005).[14]

As our court encounters an increasing number of immigration cases, we are bound to confront various iterations of the fact pattern before us today, and I have little hope that the mischief caused by this panel majority's decision will be limited only to the specific circumstances involving Banda-Ortiz. One predictable consequence of today's decision, for example, is that the immigration bar will hesitate before requesting voluntary departure because of the now-heightened risk that a successful request will result in the automatic denial of all forms of discretionary relief.

We might have avoided the problem by deferring to the accumulated wisdom of our sister circuits. Though the majority finds this weight of authority insufficient, it might at least, out of comity, acknowledge the merit of the competing position by applying the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien." *INS. v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987). This would promote a fair result for aliens facing removal and would preserve a uniform interpretation of the relationship between the statutory provisions governing voluntary departure and motions to reopen. I respectfully dissent.

---

[13](...continued)
and federal petitions, he faced the "Hobson's choice" of filing in state court, and dismissing his federal petition (sacrificing review of all his federal claims), or filing concurrently in state and federal court, and defaulting his state petition (but satisfying federal exhaustion requirements). *See id.* at *5. As in *Wilson*, tolling is the only way to provide Banda-Ortiz with an adequate procedural means to assert his claim. *But see id.* at *8 (Garza, J., dissenting) (concluding that equitable tolling, *inter alia*, "disregarded AEDPA's statutory scheme.").

[14] *See also Barroso*, 429 F.3d at 1205-06; *Lopez-Chavez*, 383 F.3d at 653 (holding that § 1240.26(f) does not bind judicial officers).