LIPEZ, Circuit Judge,
dissenting.
Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act (“IIRIRA”), Pub.L. No. 104-208, 110 Stat. 3009 (1996), containing both the voluntary departure provision, 8 U.S.C. § 1229c, and the motion to reopen provision, 8 U.S.C. § 1229a(e)(7), seemingly unaware of the conflict it was creating for those aliens who are granted voluntary departure and wish to exercise their statutory right to file a motion to reopen. I respectfully disagree with the majority’s resolution of that conflict.
As the majority acknowledges, an alien who files a motion to reopen after being granted voluntary departure, but before she departs, will, absent extraordinary circumstances, be unable to obtain a decision from the BIA before she is required to depart. See Dekoladenu v. Gonzales, 459 F.3d 500, 504 (4th Cir.2006) (“As a practical matter, the BIA will rarely reach a decision on a motion to reopen before the end of the voluntary departure period.”); Banda-Ortiz v. Gonzales, 445 F.3d 387, 393 n. 5 (5th Cir.2006) (Smith, J., dissenting) (describing the backlog of cases before the BIA); 2006 EOIR Stat. Y.B. T2 (stating that in fiscal year 2006, the BIA received 9,256 motions to reopen, about 23% of the total number of appeals filed with the BIA in that year). Once she departs, the alien’s motion to reopen is withdrawn, and the limitation of one motion per alien prevents re-filing after departure. 8 C.F.R. § 1003.2(d). If, like Chedad, the alien does not depart by the expiration of the voluntary departure period, any relief will be denied due to her failure to depart, even if the motion to reopen is granted. 8 U.S.C. § 1229c(d) (stating that a failure to depart within the voluntary departure period will result in ineligibility “for a period of 10 years ... [for] any further relief,” including, inter alia, cancellation of removal, adjustment of status, and change of nonimmigrant classification). Thus, it is effectively impossible for an alien who receives voluntary departure to obtain any relief through the motion to reopen process, despite the seemingly all-inclusive textual provision allowing such motions.
Although the majority acknowledges this conflict, it finds that Congress intend *67 ed the voluntary departure provision to take precedence over the motion to reopen provision. Under the majority’s interpretation, the statutory text allowing “an alien,” without further restriction or limitation, to file a motion to reopen, 8 U.S.C. § 1229a(c)(7)(A), in effect applies only to those aliens who do not apply for and receive voluntary departure. I find unpersuasive the reason cited by the majority for its insistence that Congress intended this reading of the statute.
The majority asserts that Congress intended the limitations on the voluntary departure period to be strictly enforced, even at the expense of an alien’s right to file a motion to reopen, because of the importance of voluntary departure to the “smooth functioning of the country’s immigration procedures.” Relatedly, the majority notes that IIRIRA made a number of changes to the previously existing voluntary departure rules, including limiting the length of the departure period and increasing the sanctions imposed on aliens who failed to comply with the terms of the departure agreement.
I agree with the majority’s conclusion that these changes reinforce the point that voluntary departure is a particularly important component of our immigration system. However, in trying to resolve the statutory conflict raised here, we cannot look to IIRIRA’s modifications to the voluntary departure scheme without giving-equal attention to IIRIRA’s adoption of the motion to reopen provision. See Banda-Ortiz, 445 F.3d at 392 (Smith, J., dissenting) (agreeing that “voluntary departure represents a bargain struck between an alien and the government,” but objecting “to limiting our search for the terms of that bargain to statutory provisions conferring benefits on only one of the parties”). In other words, the best way to discern Congress’ intent when it passed IIRIRA is to examine the statute as a whole, rather than focusing on a single piece. In my view, the panel majority gives short shrift to IIRIRA’s simultaneous addition of a right to file a motion to reopen, and, therefore, fails to account for that component of the statute in its assessment of Congress’ intent.
Insteád of effectively writing an exception into the motion to reopen provision on such dubious grounds, I would follow the majority of circuit courts and hold that a motion to reopen, filed before the expiration of the voluntary departure period, automatically tolls the running of that period until the BIA resolves the motion. See Azarte v. Ashcroft, 394 F.3d 1278, 1289 (9th Cir.2005) (“The BIA’s interpretation ... deprives the motion to reopen provision of meaning by eliminating the availability of such motions to those granted voluntary, departure. An approach more consistent with the statute as a whole is to toll the voluntary departure period when an alien, prior to the expiration of his voluntary departure period, files a timely motion to reopen.... Such an interpretation would effectuate both statutory provisions.” (footnote omitted)); see also Ugokwe v. U.S. Att’y Gen., 453 F.3d 1325, 1331 (11th Cir.2006); Kanivets v. Gonzales, 424 F.3d 330, 335-36 (3d Cir.2005); Sidikhouya v. Gonzales, 407 F.3d 950, 952 (8th Cir.2005). But see Dekoladenu, 459 F.3d at 505 (holding that the BIA is not required to toll the voluntary departure period when a timely motion to reopen is filed because of the statutory construction canon requiring that narrower provisions (here, the voluntary departure provision) take precedence over conflicting general provisions (here, the motion to reopen provision)); Banda-Ortiz, 445 F.3d at 390-91 (holding that the BIA is not required to toll the voluntary departure period because such tolling would be “in tension with, if not opposed to, limits on the length *68 of and authority to extend voluntary departure,” contrary to Congress’ intent).
The two statutory provisions at issue here inescapably conflict, creating a certainty that the strict application of one provision will distort the other. Although the majority’s approach enforces a literal reading of the voluntary departure provision, it does so by effectively rewriting the plain text of the motion to reopen provision. In the face of such a conflict, tolling offers a way of harmonizing the conflicting statutes instead of choosing between them.
Tolling ... accords with all of Congress’s objectives in IIRIRA. It preserves the right of all removable aliens to file a single, good-faith motion to reopen after a final adjudicative order of the BIA. It also allows aliens to seek voluntary departure without fear of surrendering other avenues of procedural relief. Finally, it does no damage to Congress’s desire to place reasonable limits on the voluntary departure period: The total time initially allotted for departure (and hence the time available to file to reopen) still cannot exceed sixty days, and limiting claimants to one motion to reopen, supported by evidence of newly-discovered facts, will temper the frequency and duration of tolling.
Banda-Ortiz, 445 F.3d at 394 (Smith, J., dissenting).
We have previously stated that tolling the voluntary departure period is not legally equivalent to extending it. Bocova v. Gonzales, 412 F.3d 257, 269 (1st Cir.2005) (“A suspension of a voluntary departure period merely tolls the running of that period; it does not extend it.”) [11]; see also Desta v. Ashcroft, 365 F.3d 741, 747 (9th Cir.2004) (defining a stay of voluntary departure as “stopping the clock from running,” but noting that a stay does not “add[ ] more time to that clock”); Lopez-Chavez v. Ashcroft, 383 F.3d 650, 652 (7th Cir.2004) (“Staying a voluntary departure order merely tolls the voluntary departure period; after the stay expires ..., the clock begins ticking again and the alien has the balance of the days left in which to leave the country.”). The distinction between a stay or tolling of a period and an extension of the period is widely recognized. See, e.g., Johnson v. Railway Exp. Agency, Inc., 421 U.S. 454, 473, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (Marshall, J., concurring in part and dissenting in part) (noting that the “common understanding” of tolling is that “tolling entails a suspension rather than an extension of a period of limitations”); Sobers v. Shannon Optical Co., 326 Pa.Super. 170, 473 A.2d 1035, 1037 (1984) (“[A] suspension of proceedings and a tolling of time limitations cannot be construed as the equivalent of an extension of time.”). Applying that principle, the tolling approach here does not contravene the text of the voluntary departure provision. As Judge Smith, dissenting from the Fifth Circuit’s decision in Bandctr-Ortiz, observed, reliance on the doctrine of tolling does not “undermine” the statutory text simply because the effect may be to lengthen the number of calendar days before the alien is required to depart. 445 F.3d at 395 (Smith, J., dissenting).
We invoke the tolling remedy in our system of justice where the strict applica *69 tion of the time allotted for a particular action or filing leads to unfair or unjust results. See Salois v. Dime Sav. Bank of N.Y., 128 F.3d 20, 25 (1st Cir.1997) (observing that “under federal law, equitable tolling is applied to statutes of limitations ‘to prevent unjust results or to maintain the integrity of a statute’ ” (quoting King v. California, 784 F.2d 910, 915 (9th Cir.1986))). I am not suggesting that the remedy of equitable tolling, in the classic sense, applies here. That remedy applies when the “extraordinary circumstances” of a particular case require relief from the time limits of a statute. Here, we are trying to avoid unfairness on a much larger scale from the unforeseen conflict of two statutory provisions. ’ But that difference only strengthens the argument for the application of a tolling remedy derived from equitable principles that are designed to preserve the integrity of a statutory deadline while avoiding the harshness that can result from its unyielding application.
The majority asserts that the tolling approach, articulated most fully by the Ninth Circuit in Azarte, 394 F.3d 1278, is premised on the notion that “motions to reopen are available only in proceedings where voluntary departure has been granted.” I find nothing in the text or reasoning of the other circuits’ opinions suggesting reliance on such a dubious premise. The statute says that all aliens who have been unsuccessful in removal proceedings may file a single motion to reopen, without any reference to those who receive voluntary departure and those who do not. I agree with the majority that there is no conflict between this provision and the voluntary departure provision as applied to those aliens who do not receive voluntary departure. In my view, however, this observation is simply a restatement of the problem and not a resolution of it.
The majority also responds to the tolling approach by saying that Chedad has no “statutory right” to file a motion to reopen because the statute does not provide such a right for those who receive voluntary departure. As the majority puts it: a “statutory right [ ] is only as broad as the statute in question has made it.” However, under the plain text of the statute, Chedad, like every other alien who has been ordered removed, has a right to file a single motion to reopen, so long as he does so within sixty days of the final order of removal.[12] 8 U.S.C. § 1229a(c)(7)(A). The statement that Chedad has no “right” to file a motion to reopen derives not from the text of the statute, but from the majority’s understanding of the legislative intent underlying that statute. Like the Ninth Circuit, I think “the proposition that Congress, while expressly codifying the tradition of motions to reopen, intended sub silentio to preclude their availability in a significant number of cases,” Azarte, 394 F.3d at 1289, is implausible.
Although this case has all the indicia of a classic debate over statutory interpretation, it has substantial real world implications. In fiscal year 2006, immigration courts granted voluntary departure to over 22,000 aliens. 2006 EOIR Stat. Y.B. Ql. There is no dispute that tolling is unavailable for aliens who fail to file their motion to reopen prior to the expiration of the voluntary departure deadline. See supra note 3. Importantly, those aliens who have *70 received voluntary departure already have been required to show good moral character for five years and the absence of any convictions for aggravated felonies or crimes of moral turpitude. See 8 C.F.R. § 1240.26(c)(1); see also Banda-Ortiz, 445 F.3d at 393 (Smith, J., dissenting) (“The result is particularly harsh when one considers that it operates to disadvantage those aliens whose good behavior has entitled them to the solicitude of the law of voluntary departure.”). Even if only a small percentage of those aliens granted voluntary departure would file a timely motion to reopen, the majority’s decision unwisely precludes any possibility of relief for aliens who might be entitled to such relief despite the exacting standards applicable to motions to reopen.
The specific facts of this case illustrate that harsh reality. Chedad has been in the United States for thirteen years, and has been in immigration proceedings for almost ten years, after he overstayed his six-month non-immigrant visa. At the time the proceedings began, he was married to a lawful permanent resident, who had a pending application for naturalized citizenship, and he has consistently asked the IJ and the BIA for a continuance so that his wife’s application could be processed and, accordingly, his status could be adjusted to that of a lawful permanent resident. See 8 U.S.C. § 1151(b)(2)(A)(i). Although the IJ initially granted Chedad a continuance, the IJ refused to allow any further delays after a year. Chedad requested and received voluntary departure, and asked again for a continuance. The IJ denied his request and gave him sixty days to leave the country. Chedad promptly filed an appeal with the BIA. While his appeal was pending, his wife’s citizenship was approved. With his appeal still before the BIA, Chedad filed a timely motion to remand, asking that his case be sent back to the IJ, before the BIA had decided the appeal, so that he could adjust his status in light of his wife’s American citizenship.
Chedad, however, made his one and only procedural error at that time. His motion to remand was not accompanied by a petition for adjustment of status, as the regulations required. On the basis of this technical oversight, the BIA denied the motion to remand and reinstated the IJ’s voluntary departure order. Therefore, Chedad could only present evidence of his wife’s change in citizenship status through a motion to reopen filed with the BIA. He filed that motion in a timely manner. The BIA, in fact, granted the motion to reopen, finding that he had made a prima facie showing of his eligibility for adjustment of status.[13] The BIA sent his case back to the I J, who then denied all relief because Che-dad had remained in the country after the expiration of the voluntary departure period. If the timely filing of Chedad’s motion to reopen tolled the running of the sixty-day voluntary departure period, he could have presented his case for relief to the IJ.
Chedad has shown consistent cooperation and compliance with a maze of immigration laws and regulations. He has demonstrated his good moral character for a period of five years and has not been convicted of any aggravated felonies or crimes of moral turpitude. He is married to an American citizen and now, after nearly a decade of navigating our legal system, with only one minor mistake, he will be required to leave the country and is *71 precluded from seeking any relief for ten years. That stark outcome may be repeated many times over by the failure to harmonize the conflicting statutory provisions at issue in this case in a sensible and fair manner.
I respectfully dissent.

. In Bocova v. Gonzales, we held that an alien who has received voluntary departure and who seeks judicial review of the BIA's resolution of his case must file a motion seeking a stay of voluntary departure before the departure period expires and must explicitly request a stay. 412 F.3d 257, 268-69 (1st Cir.2005). In that case we rejected the claim that we could reinstate a voluntary departure period that had expired while an appeal was pending with our court; our ability to stay the departure period is limited to cases in which a formal stay is requested before the period ends. Id.

. The statute, 8 U.S.C. § 1229a(c)(7)(C)(i), imposes a ninety-day deadline for filing motions to reopen. However, we have previously held that aliens who have received voluntary departure must file their motion to reopen prior to the expiration of the voluntary departure period, which is statutorily limited to sixty days. See Naeem v. Gonzales, 469 F.3d 33, 37-38 (1st Cir.2006). Therefore, for aliens in Chedad’s situation, the effective deadline for such motions is only sixty days.

. In order to prevail on a motion to reopen, an alien must satisfy two requirements: she must “establish a ‘prima facie case for the underlying substantive relief sought’ and ... introduce ‘previously unavailable, material evidence.’ ” Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir.2003) (quoting INS v. Abudu, 485 U.S. 94, 104, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988)).