# United States Court of Appeals
## For the First Circuit

No. 05-1438

SANDRA H. DACOSTA,

Petitioner,

v.

ALBERTO GONZALES,
Attorney General of the United States,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lipez, Circuit Judge,

Cyr, Senior Circuit Judge,

and Howard, Circuit Judge.

Jose A. Vazquez on brief for petitioner.
Peter D. Keisler, Assistant Attorney General, Anthony W. Norwood, Senior Litigation Counsel, and Terri J. Scadron, Assistant Director, Office of Immigration Litigation, Civil Division, on brief for respondent.

May 24, 2006

**HOWARD**, **Circuit Judge**.  Sandra DaCosta, a native and citizen of Brazil, petitions for review of a decision of the Board of Immigration Appeals (BIA).  The BIA found DaCosta statutorily ineligible for adjustment of status and ordered her removed from the United States.  We deny the petition.

DaCosta failed to depart the United States when her six-month tourist visa expired in May 1994.  Over two years later, she filed an application for political asylum and withholding of removal with the Immigration and Naturalization Service (INS)[1] claiming that she had been threatened by Brazilian drug traffickers.  In July 1997, the INS commenced removal proceedings against DaCosta by charging her with overstaying her visa.  Conceding removability, DaCosta renewed her request for asylum.  Following a hearing, an immigration judge found DaCosta removable and denied her applications for asylum and withholding of removal.  The immigration judge granted her voluntary departure in lieu of removal but informed her that if she failed to depart by October 13, 1998, she would be subject to removal without further notice.

[1]In March 2003, during the pendency of proceedings in this case, the functions of the INS were reorganized and transferred from the Department of Justice to the newly formed Department of Homeland Security (DHS).  See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).  Title 8 of the Code of Federal Regulations was thereafter reorganized and amended to reflect the resulting division of jurisdiction between the DHS and the Executive Office for Immigration Review, which includes the immigration courts and the BIA and remains under the direction of the Attorney General.  See 68 Fed. Reg. 10349 (Mar. 5, 2003).  To avoid confusion, we shall employ the shorthand "INS" whether referring to the former INS or the present DHS.

The BIA affirmed without opinion on June 6, 2002 and granted DaCosta an additional 30 days to voluntarily depart the United States "subject to any extension beyond that time that may be granted by the district director." Citing section 240B(d) of the Immigration and Nationality Act (INA), the BIA warned that if DaCosta failed "to depart the United States within the time specified, or any extensions granted by the district director, [DaCosta] . . . shall be ineligible for a period of 10 years for any further relief including adjustment of status." See 8 U.S.C. § 1229c(d). DaCosta did not petition for review of that order, and, despite the BIA's warning, failed to depart or to request an extension of the voluntary departure period.

On September 3, 2002, DaCosta moved the BIA to reopen her case to allow her to apply for an adjustment of status to lawful permanent resident. DaCosta claimed that she had married a United States citizen and that, in August 2000, during the pendency of her BIA appeal, her spouse had filed an I-130 "alien relative" petition in support of her I-485 application for adjustment. According to DaCosta's motion, the INS had accepted her application, her husband's petition and the accompanying processing fees, and had subsequently notified DaCosta to appear for an interview at the INS office in Hartford, Connecticut. DaCosta claimed that the INS agent who conducted the interview informed her that her application would be transferred to the Providence, Rhode Island, INS office.

DaCosta further claimed that, on July 16, 2002, she received a letter from the Providence office informing her that it lacked jurisdiction to process her application because she was in removal proceedings. See 8 C.F.R. § 245.2(a)(1) ("After an alien . . . is in deportation or removal proceedings, his or her application for adjustment of status . . . shall be made and considered only in those proceedings."). According to DaCosta's motion, for nearly two years she had been led to believe that her application was being processed by the INS when in fact it was not. DaCosta therefore asserted that her case should be reopened because the INS had "misled" her during the time period when she could have asked the BIA to remand her case for consideration of her adjustment application. The INS did not file an opposition to DaCosta's motion to reopen.

On October 24, 2002, the BIA, noting only the lack of opposition from the INS, granted DaCosta's motion to reopen and remanded the case for further proceedings.[2] On remand, the INS argued that DaCosta was ineligible for adjustment of status because she had failed to comply with the BIA's voluntary departure order of June 6, 2002. The INS argued that INA § 240B(d) mandates that an alien who fails to voluntarily depart within the time period specified in a voluntary departure order is ineligible for

---

[2]Three days before the BIA order reopening proceedings, the INS Service Center in Vermont granted the I-130 petition filed by DaCosta's husband and instructed DaCosta to file a I-485 application for adjustment.

-4-

adjustment of status for a period of ten years. See 8 U.S.C. § 1229c(d). The immigration judge disagreed, finding that the BIA's order reopening the case extinguished the legal consequences of her failure to timely depart. The immigration judge therefore considered the merits of DaCosta's adjustment application. During cross-examination at the hearing, DaCosta confirmed her receipt of the BIA's June 6, 2002 order denying her appeal. She testified that she understood that the order required her to leave the United States within 30 days and that if she failed to depart within that time, she could be fined and would be ineligible for certain forms of relief. Nevertheless, on October 23, 2003, the immigration judge granted DaCosta's application for adjustment of status. See 8 U.S.C. § 1255.

The INS appealed to the BIA, again arguing that DaCosta was statutorily ineligible for relief. DaCosta, citing to a provision in the INA that was repealed in 1996 with passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), responded that "exceptional circumstances" beyond her control -- the INS's two-year delay in notifying her that it did not have jurisdiction to adjudicate her application -- excused her failure to depart. See INA § 242B (codified at 8 U.S.C. § 1252b(e)(2)(A) (1995) (repealed 1996)). DaCosta also argued that the INS had waived its opportunity to appeal the immigration judge's decision to grant adjustment of status by failing to oppose

-5-

her motion to reopen. On February 24, 2005, the BIA sustained the INS's appeal and vacated the order granting adjustment. Acknowledging that it had made a good-faith error in reopening the case, the BIA agreed with the INS that DaCosta was statutorily ineligible for adjustment of status because she had violated an order to depart. Citing Matter of Shaar, the BIA held that DaCosta had failed to establish "exceptional circumstances" sufficient to excuse her failure to depart. See 21 I. & N. Dec. 541, 544-46 (BIA 1996) (holding that, during the pendency of a voluntary departure period, neither the filing of a motion to reopen to apply for a new form of discretionary relief nor an immigration judge's failure to adjudicate such a motion qualify as "exceptional circumstances" sufficient to excuse a failure to depart within the confines of the departure order). The BIA ordered DaCosta removed to Brazil. She thereafter filed the present petition for review.[3]

---

[3]Contemporaneous with her petition for review, DaCosta moved the BIA to reconsider its February 2005 decision. Although the BIA's subsequent denial of that motion is not the subject of the present petition for review, we note that the BIA offered a point of clarification regarding an error in its previous order of February 2005. Because removal proceedings were commenced against DaCosta in July 1997, after the passage of the IIRIRA, the new section 240B(d), as opposed to the former section 242B, provides the applicable voluntary departure provision. Compare 8 U.S.C. § 1252b(e)(2)(A) (1995) (repealed 1996), with 8 U.S.C. § 1229c(d) (2005). The BIA noted that, among other things, the new provision removes the opportunity for an alien to demonstrate "exceptional circumstances" excusing a failure timely to depart. See 8 U.S.C. § 1229c(d) ("If an alien . . . fails voluntarily to depart the United States within the time period specified [in a voluntary departure order], the alien shall be . . . ineligible for a period of 10 years for any further relief," including adjustment of status under 8 U.S.C. § 1255) (emphasis added). The BIA therefore

DaCosta's petition to this court does not contest that INA § 240B(d) bars an alien from receiving an adjustment of status where the alien has previously failed to depart the United States within the deadline of a voluntary departure order. See Jupiter v. Ashcroft, 396 F.3d 487, 491 (1st Cir. 2005) (holding that the plain language of INA § 240B(d) renders an alien ineligible for adjustment of status where the alien has previously failed to adhere to a voluntary departure order). She also abandons her argument that "exceptional circumstances" excuse her failure to timely depart. Rather, she asserts that, by failing to oppose her motion to reopen for consideration of her application for adjustment of status, the INS waived its right to contest the immigration judge's subsequent order granting her adjustment. She further contends that the BIA's order reopening her case had the effect of reopening and tolling her voluntary departure period and gave the immigration judge the authority to consider afresh her application for adjustment of status.

DaCosta also presents three new legal theories based on the same set of operative facts previously cited in support of her "exceptional circumstances" argument. First, she argues that the government should be equitably estopped from asserting her ineligibility for adjustment in light of her detrimental reliance

recognized that it had erred in previously considering DaCosta's "exceptional circumstances" argument. But because that error did not alter the result, the BIA concluded that it was harmless.

-7-

on the INS's implicit and explicit representations that it was processing her application. For similar reasons, she contends that the running of her voluntary departure period should be regarded as having been equitably tolled until October 21, 2002, the date in which her husband's I-130 petition was approved. Finally, she asserts that the INS's conduct in mishandling her application violated her due process rights.

We begin by outlining the limits of our jurisdiction to adjudicate DaCosta's claims. The INA strips the courts of jurisdiction to review BIA decisions granting or denying discretionary relief such as adjustment of status. See 8 U.S.C. § 1252(a)(2)(B). Because a BIA decision on the merits of an application for adjustment of status is committed to the discretion of the Attorney General, "arguably, this court would not have jurisdiction to review that discretionary determination." Succar v. Ashcroft, 394 F.3d 8, 19 n.15 (1st Cir. 2005). In this case, however, the BIA did not reach the merits of DaCosta's adjustment claim, finding, as a threshold matter, that she is statutorily ineligible for such relief. The arguments presented in DaCosta's petition are legal in nature, "and as such [are] not within the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(B)." Id. at 19; see also Cho v. Gonzales, 404 F.3d 96, 100 (1st Cir. 2005). We review such legal questions de novo, subject to established principles of

agency deference.  See INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999); Herrara-Inirio v. INS, 208 F.3d 299, 304 (1st Cir. 2000).

There is another jurisdiction-stripping provision, however, that is applicable here:  8 U.S.C. § 1252(d)(1), which permits judicial review of a final order of removal only where "the alien has exhausted all administrative remedies available to the alien as of right."  In her brief to the BIA preceding its February 2005 order (the decision from which DaCosta petitioned for review), DaCosta did not argue that the doctrines of equitable estoppel or equitable tolling were applicable.  Because the BIA was not given the opportunity to adjudicate these claims, we may not consider them now.  See Olujoke v. Gonzales, 411 F.3d 16, 23 (1st Cir. 2005) (noting that we lack authority "to consider points not squarely raised before the BIA").[4]

DaCosta's due process argument, which was also not presented to the BIA, is subject to a different analysis.  We have noted that "an asserted denial of due process may, in certain limited circumstances, be exempt from the ordinary exhaustion requirement."  Jupiter, 396 F.3d at 492 (noting that such

_____

[4]DaCosta did ultimately raise these issues with the BIA in the motion to reconsider she filed contemporaneously with this petition for review.  But although the BIA subsequently denied that motion, DaCosta never petitioned for review of that decision.  We therefore lack jurisdiction to review that decision and consequently cannot consider the arguments DaCosta raised for the first time in her motion to reconsider.  Cf. Asemota v. Gonzales, 420 F.3d 32, 33 (1st Cir. 2005) (considering only the denial of petitioner's motion to reconsider where petitioner failed to timely petition for review of the underlying order).

circumstances "are rare and are restricted to claims that are beyond the authority of the agency to adjudicate"). Without deciding whether DaCosta's due process claim falls within this exemption, we conclude that it cannot succeed. See id. (assuming jurisdiction arguendo where petitioner's due process claim was not colorable). A due process claim requires that a cognizable liberty or property interest be at stake. See id. (citing Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976)). Because adjustment of status is a discretionary form of relief, it does not rise to the level of such a protected interest. See id. (citing Henry v. INS, 74 F.3d 1, 7 (1st Cir. 1996)).

DaCosta's waiver argument also fails. DaCosta contends that the INS is barred from presenting an argument as to her eligibility for adjustment where it previously declined an opportunity to "try" the issue by not opposing her motion to reopen. But the cases she cites, Matter of Kasinga, 21 I. & N. Dec. 357, 363 (BIA 1996) (denying remand where the INS already had an opportunity to explore a particular issue before the immigration judge) and Matter of Guevara, 20 I. & N. Dec. 238, 249 (BIA 1991) (denying a motion to reconsider where the INS already had ample opportunity to introduce additional evidence of deportability), are inapposite. The filing of a motion to reopen with the BIA is not a vehicle for trying an issue, but is merely a request for the opportunity to try it. Although the INS did not oppose the motion

to reopen, the INS did not waive its right to present an argument against DaCosta's request for adjustment of status or to appeal the immigration judge's decision granting such relief.  DaCosta's entitlement to adjustment of status was not before the BIA at the motion to reopen stage.

DaCosta's remaining argument is that she actually did <u>not</u> violate the BIA's voluntary departure order.  She contends that, by reopening her case, the BIA effectively expunged its June 6, 2002 voluntary departure order.  Consequently, she argues, since the BIA's final decision ordering voluntary departure was erased, the requirement to leave the United States within 30 days of the final decision was never triggered.

DaCosta places too much significance on the BIA's order reopening her case.  It is undisputed that DaCosta's voluntary departure period had already expired <u>before</u> she filed her motion to reopen with the BIA.  Although the BIA's reopening of the case had the legal effect of vacating the BIA's June 6, 2002 order, it could not "retroactively nullify" DaCosta's previous violation of the terms of that order.  <u>Cf.</u> <u>Khalil</u> v. <u>Ashcroft</u>, 370 F.3d 176, 180 (1st Cir. 2004) (holding that reinstatement of a new voluntary departure period did not apply retroactively to eradicate the legal consequences of failing to comply with the agency's original grant of voluntary departure so as to render the alien eligible for adjustment of status); <u>see</u> <u>also</u> <u>Bocova</u> v. <u>Gonzales</u>, 412 F.3d 257,

268, 270 (1st Cir. 2005) (holding that "[o]nce the voluntary departure period has run its course, a court of appeals lacks the authority to fashion a new one or to reinstate or extend the old one[,]" and that, in order to suspend a voluntary departure period, an alien must "explicitly request that relief before the expiration of the voluntary departure period") (emphasis added).

Voluntary departure is a discretionary form of relief that allows an alien subject to removal time in which to leave the country of her own volition. See id. at 264-65. The privilege of voluntary departure provides benefits to both the government and the alien, but with the benefits come "attendant responsibilities." Id. at 265. A failure to honor those responsibilities results in mandatory sanctions. The BIA's order reopening DaCosta's case cannot expunge her previous violation of an order to depart. Therefore, the BIA properly found DaCosta statutorily ineligible for adjustment of status for failure to comply with an order to voluntarily depart.

**The petition for review is denied.**