LIPEZ, Circuit Judge,
dissenting.
The majority holds that the BIA properly placed the burden of contesting remova-bility on Rumierz and correctly concluded that he has not met his burden. The majority emphasizes that there is no evidence of the validity of Rumierz’s claim of errors in his underlying conviction; that the stipulated vacatur was not the result of an adjudication on the merits of Rumierz’s claim of errors; and that there is no evidence that the state’s attorney agreed to the stipulated vacatur because of the claim of errors. I disagree that Rumierz has failed to meet the burden assigned to him by the BIA. Because I conclude that he met that burden, I would not reach the more difficult issue of whether the BIA properly placed the burden on the petitioner in this ease. Indeed, there is good reason to question whether the majority’s analysis of the issue comports with the procedural posture of this case or with the arguments invoked by the BIA and the *45 government in support of the allocation of the burden. For these reasons, I respectfully dissent.
A. Allocation of Burden
Although the majority acknowledges the “odd procedural posture” of this case, ante at 36, it does not acknowledge that this procedural posture undermines its analysis of the allocation of the burden. In concluding that the BIA properly placed the burden of contesting remova-bility on Rumierz, the majority treats the BIA’s decision as the equivalent of a denial of a motion to reopen. See ante at 37 - 38. This is an inaccurate characterization of the BIA’s actions. Here, a federal district court remanded the case (initially brought through a habeas petition) to the BIA to “reconsider its last decision in light of subsequent developments, including the Agreement and Stipulation, dated August 23, 2002, from the Superior Court, Windsor County, Vermont.”[18] This was not a directive from the court to the BIA to decide whether it should reopen its last decision (which would be the threshold decision that the BIA would have to make if presented with a motion to reopen). Nor did the BIA treat the remand as such. We have explained that “[t]he filing of a motion to reopen with the BIA is not a vehicle for trying an issue, but is merely a request for the opportunity to try it.” Dacosta v. Gonzales, 449 F.3d 45, 50 (1st Cir.2006). If the BIA here had denied an untimely motion to reopen, it would have framed its decision in an entirely different manner, citing the regulations for motions to reopen and explaining why it would not reopen Rumierz’s case. Instead, the BIA began its analysis by stating that, “[ujpon further consideration, the respondent’s appeal will again be dismissed.” It considered the question of removability in light of the vacatur and then concluded that Rumierz’s conviction was still valid for removal purposes and “therefore ... the respondent remains de-portable as charged. Accordingly, the respondent’s appeal will again be dismissed.” This language demonstrates that the BIA, as instructed, reopened Ru-mierz’s administrative proceedings but concluded that Rumierz was nonetheless removable.
This distinction is important because the BIA’s reopening of a case vacates the final order of removal and reopens the administrative removal proceedings. See id. During administrative removal proceedings, the government has the burden of proving by “clear and convincing evidence” that the petitioner is subject to removal on the basis of his convictions. 8 U.S.C. § 1229a(c)(3)(A); see also Pickering v. Gonzales, 454 F.3d 525, 527 (6th Cir.2006) (concluding that, once the petitioner produces evidence that his conviction has been vacated, “the [pjetitioner is deportable only if the* government can show, with clear, convincing and unequivocal evidence, that the conviction was vacated solely for immigration reasons”); Cruz-Garza v. Ashcroft, 396 F.3d 1125, 1130 (10th Cir.2005) (holding that, in a case where the petitioner obtained post-conviction relief reducing his felony conviction to a misdemeanor, “the evidence of record is legally insufficient to satisfy the INS’s stringent burden of proof and, thus, ... the order for removal must be reversed”); Sandoval v. INS, 240 F.3d 577, 581 (7th Cir.2001) (“In order to show that Sandoval’s original conviction for possessing more than thirty *46 grams of marijuana remained in effect, the INS could have shown 1) that the Illinois judge exceeded his authority under state law, thus rendering the modification ineffective, or 2) that the sentence modification was legal but not effective for purposes of federal immigration law. We find that the INS did not establish either of these factual situations by clear, unequivocal, and convincing evidence.”).[19] If, as I believe the record establishes, the BIA actually reopened Rumierz’s case in response to the district court’s order, rather than simply adjudicating the case as a request for reopening, the BIA erred in its allocation of the burden of proof.
It would therefore be improper to defer to the agency’s error under Chevron. The majority observes that the Immigration and Nationality Act (“INA”) is “silent on who has the burden of showing the effect of convictions which are vacated or modified after final orders of removal have entered.” Ante at 36.[20] That may be true, but if the proceedings were reopened in this ease (thus vacating the final order of removal), that observation misses the point. The applicable statutory provision, 8 U.S.C. § 1229a(c)(3)(A), is not silent on who has the burden of showing the effect of a conviction, vacated or not, during administrative removal proceedings. As the plain language of the statute states, and as the aforementioned cases explain, the government has the burden of establishing removability during removal proceedings. Thus, if the BIA reopened Rumierz’s administrative removal proceedings but denied his appeal, it misapplied the allocation of burden under 8 U.S.C. § 1229a(c)(3)(A) and there is no basis for applying Chevron deference to its shifting of the burden to the petitioner.
The regulation, cases, and analogies relied upon by the majority to support its contrary view of the case only further undermine its conclusion. None of these regulations, cases, or analogies — applicable to motions to reopen — were mentioned in the BIA decision or by the government in its briefs. The BIA never cited 8 C.F.R. § 1003.2, the regulation governing motions to reopen, ante at 37, or In re Beckford, 22 I. & N. Dec. 1216 (BIA 2000), a case in which the BIA rejected an untimely motion to reopen where the petitioner conceded removability, see ante at 37-38. For its part, the government also said nothing of motions to reopen or the standards governing them until oral argument, where it raised for the first time the argument that the BIA treated this case as a motion to reopen. In its brief, the only argument the government raised in support of the BIA’s allocation of the burden in this case was that “an alien who obtains a [vacatur] of a state court conviction is clearly in a better position tha[n] DHS personnel to have access to documentation regarding the circumstances of the vaca-tur.” The weakness of this argument as a *47 justification for burden shifting is readily apparent,[21] which is perhaps why the majority opinion does not even mention it. In any event, the arguments upon which the majority relies are not the arguments expressed in the BIA decision nor arguments raised in the government’s brief.
We have said many times that “[w]e must judge the action of an administrative agency based only on the reasoning provided by the agency, not based on substitute grounds we construct ourselves to salvage the agency’s action.” Ymeri v. Ashcroft, 387 F.3d 12, 17 (1st Cir.2004). Furthermore, “[w]e have consistently held that, except in extraordinary circumstances, arguments not raised in a party’s initial brief and instead raised for the first time at oral argument are considered waived.” United States v. Pizarro-Berrios, 448 F.3d 1, 5 (1st Cir.2006); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) (“[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.”). Here, the majority both constructs new grounds to salvage the BIA’s action and, in so doing, relies on arguments not raised in the government’s brief.
This unorthodox approach is apparently necessary to defend a BIA decision that cannot be defended on its own terms.[22] From my reading of the BIA’s decision, the BIA reopened but ultimately denied Rumierz’s administrative appeal. In so doing, the BIA erred in allocating the burden to Rumierz under 8 U.S.C. § 1229a(c)(3)(A). In any event, the majority’s decision to reframe the BIA’s decision and supply new reasoning aside, we did not have to reach this difficult issue here. As I describe in further detail below, I conclude that Rumierz has met the burden allocated to him by the BIA.
B. Rumierz’s Vacatur
The BIA stated that Rumierz “must present evidence to show that the Vermont *48 court’s action in striking the stolen property conviction was tied to a defect in that conviction, rather than related in part to immigration proceedings.” Although the record evidence here is sparse,[23] it includes (1) an “Agreement and Stipulation” that the conviction for possession of stolen property “shall be stricken and amended to negligent operation of a motor vehicle” and (2) an affidavit of Deputy State’s Attorney Matthew Huntington regarding the Agreement and Stipulation that states that Rumierz raised “errors in his earlier conviction in Windsor District Court, Vermont” through a “Petition for Post-Conviction Relief.” Without acknowledging the affidavit’s reference to Rumierz’s claims of errors in his conviction, the BIA stated that “there is no representation in the record regarding any kind of defect in the merits of the respondent’s Vermont conviction, and ... the state’s attorney has stated that in striking the conviction, the judge did not address or adjudicate the merits of the respondent’s claim.” For these reasons alone, the BIA concluded that Rumierz failed to meet his burden.
In affirming the BIA’s decision, the majority again bases its reasoning on grounds not relied upon by the BIA or raised in the brief of the government. Specifically, the majority acknowledges the affidavit’s reference to Rumierz’s claims of errors in his conviction, but asserts that there is no evidence that Rumierz raised “valid claims of defects” in his criminal proceedings and that the state’s attorney, in agreeing to the stipulated motion, may have done so “for any number of reasons other than the strength and validity of those claims,” ante at 42 - 43. For these reasons, the majority holds that the record does not compel the BIA to conclude that Rumierz has failed to meet his burden.
The majority’s decision reflects the erroneous notion that a vacatur must follow an adjudication on the merits of claimed legal errors or some further inquiry regarding the validity of the claims and any hidden reasons behind the government’s agreement to the stipulation. Such requirements are a misapplication of In re Pickering, 23 I. & N. Dec. 621 (BIA 2003). The proper approach in this case is to examine whether Rumierz has provided evidence that the stipulated order was based on defects in his underlying conviction, rather than grounds proscribed by Pickering. Following this approach, I conclude that the BIA was compelled to find that Ru-mierz met the burden allocated to him.
1. Vacatur by stipulation
In Pickering, the BIA explained that “if a court with jurisdiction vacates a conviction based on a defect in the underlying criminal proceedings, the respondent no longer has a ‘conviction’ [for immigration purposes]. If, however, a court vacates a conviction for reasons unrelated to the merits of the underlying criminal proceedings, the respondent remains ‘convicted’ for immigration purposes.” 23 I. & N. Dec. at 624; see also Herrera-Inirio v. INS, 208 F.3d 299, 306 (1st Cir.2000) (“[A] subsequent dismissal of charges, based solely on rehabilitative goals and not on the merits of the charge or on a defect in the underlying criminal proceedings, does not vitiate that original admission [of guilt].”). Nothing in Pickering precludes a stipulated vacatur from invalidating a conviction as a ground for removal or for other immigration purposes, provided that the vacatur is still based on a defect in the *49 underlying conviction rather than rehabilitative or otherwise proscribed grounds. See Pinho v. Gonzales, 432 F.3d 193 (3rd Cir.2005) (holding that the petitioner’s va-catur, obtained by settlement rather than adjudication, meets the Pickering standard because the petitioner claimed a defect in his underlying conviction); Cruz-Garza v. Ashcroft, 396 F.3d at 1131 (explaining that if “a substantive challenge to and/or showing of the inappropriateness of the felony conviction prodded the State into stipulating to a vacatur of the conviction and its replacement by a misdemeanor,” then “[o]n this scenario, petitioner’s vacated felony conviction would not satisfy the test for removal”).
The majority acknowledges that some stipulated vacaturs might suffice to meet the Pickering standard and that, in this case, the BIA did not deny Rumierz’s appeal based solely on the fact that his vaca-tur was obtained by stipulation. Yet, in affirming the decision of the BIA, the majority emphasizes several factors that are characteristic of stipulations — i.e., that the merits of Rumierz’s claims of error had not been addressed or adjudicated by the judge in ordering the stipulated vacatur; that one cannot assume that Rumierz raised “valid” claims of defect; and that the state’s attorney may have agreed to the stipulation for a variety of reasons not indicated on the record. Ante at 41 - 42 n. 13, 42 - 43. In holding that Rumierz’s va-catur cannot meet the Pickering standard based on these factors, the majority effectively creates a bar that applies to many vacaturs obtained by stipulation or settlement. As the Third Circuit’s recent decision in Pinho explains, such a bar would be inappropriate, and the factors relied upon by the majority here are simply not dispositive in a proper Pickering analysis.
Pinho, like the case here, involved a petitioner who had sought and obtained a vacatur of an earlier conviction through a settlement with the government rather than a trial. Specifically, the petitioner in Pinho had pled guilty to a drug crime, and later applied for post-conviction relief based on his claim that he had received ineffective assistance of counsel in connection with his rejection from a special alternative sentencing program (termed “PTI placement”) that would have allowed him to earn a dismissal of charges without having to plead guilty. See Pinho, 432 F.3d at 196. The government settled, and an order was issued dismissing the charges against him and, according to the parties, his conviction was vacated. See id. at 196-97. Pinho later applied for adjustment of his immigration status, but was denied on the basis of his old drug conviction. See id. at 197. In response to his filing of a complaint in district court, the court held that his vacated conviction was still a conviction for immigration purposes. See id. at 199.
The Third Circuit reversed. It found the BIA’s longstanding distinction between “rehabilitative vacaturs” (vacating a conviction for rehabilitative or immigration-related purposes) and “substantive vaca-turs” (vacating a conviction on the basis of a legal defect in the proceedings) to be reasonable. See id. at 209-10. However, the Third Circuit concluded that, under Pickering, a vacatur need not follow a formal adjudication on the merits in order to be a substantive vacatur:
The fact that the parties agreed to settle rather than proceed to trial on the ineffective assistance claim should not be dispositive. Indeed, it may be that the likelihood that the prosecution will agree to a settlement such as PTI placement will increase proportionally with the strength of the alien’s constitutional claim. If the BIA in Pickering had *50 meant to require an adjudication of the merits of aliens’ claims of substantive defects in the original conviction in order to make out an adequate “basis,” it could have said so. But it did not. It has instead drawn its line between vaca-turs “based on” underlying defects and vacaturs granted “for reasons” not related to underlying defects, and it is readily apparent that the set of vacaturs “based on” underlying defects is not necessarily coextensive with the set of vaca-turs based on adjudications of underlying defects. We must therefore inquire as to the reasons underlying the vacatur order, and it would obviously be begging the question simply to invoke the PTI acceptance yet again. The prosecutor’s offer of PTI placement did not spring into being ex nihilo; rather, it was by way of settlement of Pinho’s collateral attack on the constitutional validity of his conviction. The relevant “reason,” then, for our Pickering analysis, is plainly the reason for the settlement agreement.
Id. at 211. In so holding, the court also rejected the government’s argument that it should look beyond the record to consider any hidden reasons the state’s attorney might have for agreeing to the stipulated vacatur:
At oral argument the government contended that the motives of state prosecutors and judges might change over time and might not be reflected in the record. Perhaps a new prosecutor, reviewing old cases, might decide that some of his predecessor’s policies had been unduly harsh. Perhaps such a prosecutor, when presented with a post-conviction relief claim brought by a defendant who had been denied entry into a pre-trial diversion program years earlier because of a now-discredited policy, might decide to “do the right thing,” and help that defendant avoid the immigration consequences of his guilty plea. Perhaps a state judge, looking at the case, would see a hard-working family man threatened with deportation based on a relatively minor crime committed a decade earlier, and decide to help that hardworking family man get around the federal immigration laws. Perhaps, perhaps. We present this hypothetical to highlight the fact that it is precisely that: a hypothetical proposed by the government about possible motives of state actors nowhere found in the record .... We cannot endorse a test which requires speculation about, or scrutiny of, the reasons for judges’ actions other than those reasons that appear on the record.
Pinho, 432 F.3d at 211. Thus, the only relevant question under Pickering is whether the record itself establishes that the reason for the stipulated order was based on a defect in the conviction, and not rehabilitative or immigration-related grounds. See id. Applying this inquiry to the record in Pinho, the Third Circuit noted that Pinho “raised only one claim: ineffective assistance of counsel.... The only basis for the vacatur appearing in the order or the pleadings is Pinho’s ineffective assistance claim.... [Therefore, Pin-ho’s conviction was vacated ‘based on a defect in the underlying criminal proceedings’ and Pinho accordingly ‘no longer has a ‘conviction’ within the meaning of [the INA].’ ” Id. at 215.
The persuasive analysis of the Third Circuit in Pinho undermines each of the factors relied upon by the majority in explaining why Rumierz’s vacatur could not meet the Pickering test. Indeed, the majority’s attempt to distinguish Pinho, ante at 41 - 42 n. 13, only further illustrates why Pinho supports Rumierz’s case. First, the majority asserts that the Pinho court had the benefit of full state court *51 transcripts that demonstrated that Pinho raised a “valid” claim of ineffective assistance of counsel. Yet nowhere in the Pin-ho decision did the Third Circuit state that its holding was based on a finding that his underlying claim of error was valid or meritorious. Nor would it have been appropriate for the court to make such a judgement of validity. The concern in Pickering is solely whether the claims serving as the basis of a vacatur are related to defects in the conviction, rather than requests for equitable or rehabilitative relief. Nothing in Pickering permits the BIA or a reviewing court to re-assess the validity or strength of the claims that led to a vacatur. Cf. Pickering, 23 I. & N. Dec. at 624 (explaining that the BIA will “not look behind the state court judgment to ascertain whether the court acted in accordance with its own law in vacating the conviction”); see also Pinho, 432 F.3d at 211 (refusing to scrutinize further the decisions of prosecutors or judges when the only basis for the vacatur stated in the record was a claim of a defect in the conviction). Thus, while the Pinho court certainly had the benefit of a more extensive record than we have here, the decision in Pinho rested on the court’s assessment of the type of claim raised by the petitioner, not its validity. See Pinho, 432 F.3d at 215. Here, as in Pinho, the record shows that Rumierz’s petition for post-conviction relief was based on errors in his conviction, not Pickering-proscribed grounds.
Second, the majority distinguishes Pinho by noting that here we have a statement from the State’s Attorney that Rumierz’s claims were not addressed or adjudicated by the state court. This distinction is a non-starter. The Pinho decision also noted that the state court in that case never reached the merits of Pinho’s claim of error in his state court conviction and that requiring an adjudication of those claims would be contrary to Pickering. See id. at 211 (“If the BIA in Pickering had meant to require an adjudication of the merits of aliens’ claims of substantive defects in the original conviction in order to make out an adequate ‘basis,’ it could have said so. But it did not.”). Thus, there is no difference between the stipulation here and the settlement in Pinho in terms of whether the state court addressed and adjudicated the underlying claims of error.
Third, the majority notes that Pinho obtained a vacatur of his conviction before the agency had to take action in his case, whereas Rumierz obtained a vacatur after a final order of removal was reached in his case. This distinction is inapposite for two reasons. First, as I have explained above, the BIA effectively reopened Rumierz’s case, thus vacating the final order of removal. Second, even assuming that the final order of removal remained in place, the fact that Rumierz obtained a vacatur after the order tells us nothing about whether the record evidence shows that the vacatur meets the Pickering standard. This argument relates to the majority’s burden allocation analysis, not the Pickering analysis. Here, as in Pinho, the record evidence shows that the stipulated va-catur meets the Pickering standard, even assuming arguendo that Rumierz has the burden.
Thus, as the Third Circuit’s reasoning in Pinho demonstrates, the factors relied upon by the majority here — the lack of an adjudication on the merits, uncertainty over the validity of the petitioner’s claims of error in his conviction, and the possibility that the State’s Attorney was motivated by factors not disclosed on the record — are all inappropriate grounds for deciding that the BIA was not compelled to conclude that the vacatur presented by Rumierz met the Pickering standard. Pursuant to *52 a proper analysis, the record compels a finding that Rumierz has met the burden allocated to him by the BIA.
2. Whether the vacatur meets the Pickering standard
In order to determine whether a vacatur is tied to a defect in the underlying conviction, rather than rehabilitative or immigration-related purposes, the BIA starts by examining the order itself. See Pickering, 23 I. & N. Dec. at 624. Often, the statutory basis for the order will resolve whether the underlying conviction remains valid for immigration purposes. Compare Matter of Adamiak, 23 I. & N. Dec. 878 (BIA 2006) (holding that a conviction vacated under Ohio Revised Code § 2943.031 for the trial court’s failure to advise the alien defendant of the possible immigration consequences of a guilty plea is no longer a valid conviction for immigration purposes) and Matter of Rodriguez-Ruiz, 22 I. & N. Dec. 1378, 1379-80 (BIA 2000) (holding that a conviction vacated pursuant to Article 440 of the New York Criminal Procedure Law, which is neither an expungement statute nor a rehabilitative statute, did not constitute a conviction for immigration purposes) with Matter of Roldan-Santoyo, 22 I. & N. Dec. 512 (BIA 1999) (holding that a conviction vacated by operation of a state rehabilitative statute still constitutes a conviction for immigration purposes).
Where the order does not specify its statutory basis, the BIA will consider the grounds presented to the court by the petitioner in his or her motion to vacate the conviction. See Pickering, 23 I. & N. Dec. at 624 (“The resolution of this case ... turns on whether the conviction was quashed on the basis of a defect in the underlying criminal proceedings. In making this determination, we look to the law under which the [ ] court issued its order and the terms of the order itself, as well as the reasons presented by the respondent in requesting that the court vacate the conviction.” (footnote omitted)); see also Pinho, 432 F.3d at 215 (“To determine the basis for a vacatur order, the agency must look first to the order itself. If the order explains the court’s reasons for vacating the conviction, the agency’s inquiry must end there. If the order does not give a clear statement of reasons, the agency may look to the record before the court when the order was issued. No other evidence of reasons may be considered.”).
’ As mentioned above, the BIA will “not look behind the state court judgment to ascertain whether the court acted in accordance with its own law in vacating the conviction.” Pickering, 23 I. & N. Dec. at 624. Thus, if the record shows that a state court vacated a conviction through a statutory mechanism for addressing defects in the underlying conviction, the BIA will not consider any suggestions by the government that the state court was actually motivated by a desire to ameliorate the deportation consequences rather than correct the defect. See id.; Matter of Rodriguez-Ruiz, 22 I. & N. Dec. 1378, 1379-80 (BIA 2000); see also Pickering, 454 F.3d at 525, 530 n. 3, 2006 WL 1976043, at *4 n. 3 (“When a court acts pursuant to a law that allows it to act based only on the merits of the underlying position, it is presumed not to have acted contrary to that law, solely to enable the [petitioner to avoid adverse immigration consequences.”).
In Rumierz’s case, the order striking and amending his conviction does not specify the statutory basis for the vacatur or the nature of his claims for relief. However, the Deputy State’s Attorney’s affidavit does explain that Rumierz filed a “Petition for PosN-Conviction Relief’ in which he “alleged certain errors in his earlier con *53 viction in Windsor District Court, Vermont.” The affidavit does not state that Rumierz sought expungement through a rehabilitative statute or that he claimed relief on immigration-related grounds. The only reference in the affidavit is to err0rs in his conviction, alleged in his motion for post-conviction relief. While there is no statutory citation specified in the affidavit, Vermont’s post-conviction relief statute specifies that relief is only available through that statutory mechanism on “the ground that the sentence was imposed in violation of the constitution or laws of the United States, or of the state of Vermont, or that the court was without jurisdiction to impose the sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.” 13 V.S.A. § 7131.[24]
The BIA did not refer to these aspects of the affidavit, stating instead that “there is no representation in the record regarding any kind of defects” in Rumierz’s conviction. Given that the only representation in the record is that Rumierz sought and obtained a vacatur after alleging errors in his conviction, the BIA’s reasoning is patently erroneous. The record here compels the conclusion that the vacatur in this case meets the Pickering standard.[25] By contrast, there is simply no indication that Rumierz sought or could have been granted post-conviction relief based on the grounds proscribed by the BIA in Pickering.[26] For these reasons, I would vacate *54 the BIA’s decision and remand for termination of the removal proceedings, without reaching the question of whether the allocation of the burden in this case was proper.

. While the district court used the term "reconsider,” the more apt term under BIA regulations is "reopen” because the remand was based on new evidence, i.e., the Agreement and Stipulation and the state’s attorney’s affidavit. See 8 C.F.R. § 1003.2(c). The government at oral argument acknowledged that “reopen” was the applicable term.

. In an unpublished decision, the BIA itself has stated that "even where a conviction is vacated after the DHS initiates proceedings and makes a prima facie case with respect to the conviction, the DHS retains the burden of going forward to establish removability." In re Roberto Ortiz-Herrera, 2005 WL 3016102 (BIA Aug. 2, 2005) (affirming IJ’s decision that the government failed to meet its burden of demonstrating that vacatur of noncitizen’s state court conviction was merely for rehabilitative purposes).

. In support of this proposition, the majority cites Pinho v. Gonzales, 432 F.3d 193, 206 (3rd Cir.2005). However, Pinho did not deal with the BIA's interpretation of the statutory allocation of burden issue in the Chevron context at all. It applied a Chevron analysis to determine whether the BIA’s definition of "conviction” in Pickering was entitled to deference, an issue we have already addressed in a previous decision. See Herrera-Inirio v. INS, 208 F.3d 299 (1st Cir.2000).

. Such reasoning would hold whenever a person obtains a vacatur of his criminal conviction, regardless of the timing of the vaca-tur. Yet, at least during removal proceedings, the government still retains the burden of establishing removability even when a petitioner obtained a vacatur of an underlying conviction after proceedings have commenced. See supra Part A.

. Because of the procedural oddity of this case — on remand from the district court— Rumierz may have received a renewed review of his administrative appeal that the BIA might not otherwise have been inclined to grant him. Certainly, if Rumierz had not obtained a remand from the district court on habeas, he could have instead filed a motion to reopen directly with the BIA, which, though untimely, the BIA could have granted sua sponte. See 8 C.F.R. § 1003.2(a). But, as the majority points out, the BIA grants such motions only in extraordinary cases. Therefore, it was beneficial for Rumierz that the district court remanded this case to the BIA.
This procedural oddity only underscores why this case is a poor vehicle for announcing the majority's broad rule on the reallocation of the burden of proof when a petitioner seeks to reopen his case on the basis of a vacated conviction. Perhaps the BIA in this case should have sought clarification from the district court on the scope of the remand. Perhaps the BIA should have treated the remanded case as an untimely motion to reopen and proceeding accordingly. But it did neither of those things. Instead, as explained in its description of its decision, it reopened the administrative proceedings, considered the new evidence, decided the question of removability, and then dismissed Rumierz's administrative appeal. While it may have been preferable, in the majority's view, for the BIA to have treated this case differently, it is not appropriate for the majority to write a decision that it wishes the BIA had written or to make arguments that it wishes the government had presented in defending the agency’s action.

. Rumierz, who has been detained since 1994, was pro se at the time of the BIA's consideration of his vacatur.

. The majority suggests that Rumierz might not have been able to avail himself of Vermont’s post-conviction relief because he was no longer in custody in Vermont and had served his time for his conviction. The notion that Rumierz, detained for ten years pending removal due in part to this conviction for possession of stolen property, could not properly file a motion for post-conviction relief under the Vermont statute is plainly contrary to Vermont law. See In re Stewart, 140 Vt. 351, 438 A.2d 1106 (1981).

. While I appreciate the majority’s concern that some petitioners may seek to avoid or delay deportation by taking advantage of overburdened state attorneys, ante at 42 - 43 n. 15, I disagree that these policy concerns are implicated here. Rumierz, pro-se at the time of the BIA proceedings, is relying not on his own unsubstantiated claims that he alleged errors in his conviction, but on the sworn statement of the State’s Attorney in his case. To be sure, this case would have been much easier if Rumierz had supplied the BIA with his post-conviction relief petition, but given the State’s Attorney's acknowledgment that his petition was based on "errors in his earlier conviction,” I would not characterize these actions as "gamesmanship” on his part.

. The Sixth Circuit's recent decision in Pickering is particularly on point here. See Pickering, 454 F.3d 525, 2006 WL 1976043. In that case, the court vacated the decision of the BIA, noting that its "conclusion that [the court that vacated Pickering's conviction] acted solely for immigration reasons can only be reached by inference” and that inference was contrary to the record. Id. at *5, 531. Although the Sixth Circuit held that the government had the burden of establishing remova-bility, it noted that even if the burden were with the petitioner, he met it. Id. at *4, 530 n. 3. Specifically, the court observed that "[t]he only legal authority cited anywhere in the record of [the court that vacated his conviction] allows it to act only to redress violations of the [petitioner's rights.” Id. Thus, in order to have found that the petitioner was removable on this record, the BIA must have “assumed that [the court] ignored the legal basis the Petitioner articulated for seeking to have his conviction quashed.” Id. at *3, 529. The Sixth Circuit thus vacated the decision, holding that the record compelled the BIA to conclude that the petitioner's conviction was not vacated solely for rehabilitative or immigration-related reasons. Id. at *5, 531. Here, too, the only references in the record regarding the basis of Rumierz’s vacatur are to his claims of "errors in his earlier conviction” and his "Petition for Post-Conviction Relief.” The inference that Rumierz’s conviction was vacated by stipulation for rehabilitative or immigration-related purposes is flatly contrary to the record.