**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-2315

CYRIL ODOGWU,

Petitioner,

versus

ALBERTO R. GONZALES, U.S. Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration
Appeals.  (A75-996-737)

Argued:  November 28, 2006          Decided:  February 6, 2007

Before WILKINS, Chief Judge, WIDENER, Circuit Judge, and David A.
FABER, Chief United States District Judge for the Southern District
of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Anser Ahmad, Harrisburg, Pennsylvania, for Petitioner.
James Arthur Hunolt, UNITED STATES DEPARTMENT OF JUSTICE, Office of
Immigration Litigation, Washington, D.C., for Respondent.  **ON
BRIEF:** Peter D. Keisler, Assistant Attorney General, Civil
Division, M. Jocelyn Lopez Wright, Assistant Director, UNITED
STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation,
Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Cyril Odogwu, a native and citizen of Nigeria, petitions for review of a decision by the Board of Immigration Appeals (BIA). The BIA found Odogwu statutorily ineligible for adjustment of status and ordered him removed to Nigeria.

Odogwu's petition raises the issue of whether granting a motion to reopen nullifies the consequences of a prior violation of a voluntary departure order. We hold that it does not.

I.

Cyril Odogwu is a 39 year old native of Nigeria. He came to the United States as a non-immigrant visitor in 1998 with authorization to stay for six months. Odogwu overstayed his six-month visa, and in November 1998, the government commenced removal proceedings against him.[1] At his removal hearing, Odogwu requested that he be granted voluntary departure in lieu of removal. The immigration judge (IJ) granted Odogwu's request, and ordered that Odogwu voluntarily depart the United States by January 8, 1999.

---

[1] In March 2003, service and benefit functions of the Immigration and Naturalization Service (INS) were reorganized and transferred from the Department of Justice to the newly created Department of Homeland Security. See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002). However, the functions of the Executive Office of Immigration Review, which includes the immigration courts and the BIA, remained under the jurisdiction of the Department of Justice. See Aliens and Nationality, 68 Fed. Reg. 10,349 (March 5, 2003). To avoid confusion, we will refer to either the INS or the present DHS as simply the "government."

The IJ warned Odogwu that failure to depart by January 8 would render him ineligible for various forms of relief, including adjustment of status, for a period of ten years.

After the IJ entered the voluntary departure order, Odogwu married a United States citizen, who filed an I-130 immediate relative visa petition on his behalf. See 8 U.S.C. § 1151(b)(2)(a)(I). Odogwu requested and was granted an extension of the voluntary departure order until May 4, 1999. In April 1999, two different attorneys requested further extensions of the voluntary departure order, but those requests were denied. Odogwu did not leave on his departure date, and his voluntary departure order automatically became a final order of removal. See 8 C.F.R. § 1240.26(d); 8 C.F.R. § 1241.7.

Odogwu and his spouse divorced in December 2000. In February 2001, almost two years after his voluntary departure date, Odogwu filed a motion to reopen his removal proceedings. See 8 U.S.C. § 1229a(c)(7).[2] Motions to reopen must be filed within ninety days of a final order of removal, unless a petitioner can meet one of the statutory exceptions to the ninety-day limit. See id. at § 1229a(c)(7)(C). Odogwu argued that he was eligible for asylum, one

_____

[2]When Odogwu initiated these proceedings, motions to reopen were codified at § 1229a(c)(6). Real ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 304 (2005). Congress later redesignated former paragraphs (4), (5), and (6) as paragraphs (5), (6), and (7), respectively, and added an additional paragraph (4). See id. None of these changes affect Odogwu's case.

3

of the statutory exceptions.[3]  Odogwu also informed the IJ that he was engaged to a United States citizen, and that she was expecting their child.  The IJ granted Odogwu's motion to reopen based on his asylum petition,[4] and subsequently granted a motion to change venue to Baltimore, Maryland.

At the reopened removal hearing in Baltimore, Odogwu, through counsel, withdrew his asylum application and indicated that he was seeking only adjustment of status based on his recent marriage.[5] Before the IJ could determine the merits of Odogwu's application for adjustment of status, the government submitted a motion to pretermit Odogwu's proceedings.  The government argued that because

---

[3]"There is no time limit on the filing of a motion to reopen if the basis of the motion is [asylum] . . . and is based on changed country conditions arising in the . . . country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding."  8 U.S.C. § 1229a(c)(7)(C).

[4]The IJ stated at the hearing on Odogwu's motion to reopen that he would consider the expected birth of Odogwu's child when adjudicating his adjustment of status application.  The IJ also noted, however, that he did not know whether Odogwu was statutorily eligible for adjustment of status.

[5]In June 2001, Stacey Odogwu, petitioner's second wife, filed an I-130 immediate relative visa petition on his behalf.  Because Odogwu was subject to removal proceedings when his wife filed the I-130 visa petition, he and his wife had to prove by clear and convincing evidence that they married for legitimate purposes.  See 8 U.S.C. § 1255(e)(3).  Odogwu and his wife successfully established the legitimacy of their marriage, and the government approved the I-130 visa petition.  Odogwu then filed an I-485 Application for Adjustment of Status based on his wife's approved I-130 visa petition.  See id. at § 1255(a).  However, the IJ pretermitted Odogwu's reopened proceedings and ordered him removed to Nigeria before his I-485 application could be approved.

4

Odogwu did not depart the United States by his voluntary departure date, he was statutorily ineligible for adjustment of status for ten years. See 8 U.S.C. § 1229c(d). Odogwu's counsel did not file a timely response to the government's motion, and on January 7, 2003, the IJ pretermitted Odogwu's application for adjustment of status and ordered him removed to Nigeria.

Odogwu appealed the decision to the BIA, which affirmed the IJ's order of removal. The BIA agreed that § 1229c(d) bars Odogwu's application for adjustment of status. Odogwu then filed this appeal.

## II.

This court reviews the BIA's legal conclusions *de novo*, giving appropriate deference to its interpretations of the Immigration and Nationality Act. Nwolise v. I.N.S., 4 F.3d 306, 309 (4th Cir. 1993). This court rejects the BIA's statutory interpretations only when they are "arbitrary, capricious, or manifestly contrary to the statute." See Chevron U.S.A., Inc. v. Natural Res. Council, 467 U.S. 837, 844 (1984).

## III.

Odogwu argues that he did not violate his voluntary departure order because by reopening his case, the IJ vacated the prior departure order. The Seventh Circuit has held that granting a

motion to reopen disposes of the voluntary departure order and vitiates the effects of a violation of that order.  See Orichitch v. Gonzales, 421 F.3d 595, 598 (7th Cir. 2005); see also Bronisz v. Ashcroft, 378 F.3d 632, 637 (7th Cir. 2004).  However, the First Circuit held that while granting a motion to reopen has "the legal effect of vacating" a departure order, "it could not 'retroactively nullify' . . . [a] previous violation of the terms of that order." DaCosta v. Gonzales, 449 F.3d 45, 50 (1st Cir. 2006) (quoting Bocova v. Gonzales, 412 F.3d 257, 265 (1st Cir. 2005)).  For reasons discussed below, we adopt the First Circuit's reasoning and hold that granting a motion to reopen does not retroactively nullify the consequences of a prior violation of a voluntary departure order.

A.

Voluntary departure is a discretionary form of relief that allows a person to depart the United States voluntarily and avoid the inadmissibility restrictions that result from an order of removal. See 8 U.S.C. § 1229c(a)(1).  Voluntary departure provides benefits to both the non-citizen and the government.  See DaCosta, 449 F.3d at 51.  Voluntary departure affords the non-citizen "1) the ability to choose his own destination point; 2) the opportunity to put his affairs in order without fear of being taken into custody; 3) freedom from extended detention while the government

6

prepares for his removal; 4) avoidance of the stigma of forced removal; and 5) continued eligibility for an adjustment of status." Banda-Ortiz v. Gonzales, 445 F.3d 387, 389-90 (5th Cir. 2006). Because the individual pays for his own departure, the government saves money and avoids devoting additional time and resources to further proceedings. See id. at 390. However, the consequences of violating a voluntary departure order are severe: anyone violating a voluntary departure order is barred from being granted various forms of relief, including adjustment of status, for a period of ten years. 8 U.S.C. § 1229c(d).

Motions to reopen allow an IJ to consider evidence that has arisen subsequent to the petitioner's previous removal hearing. See 8 U.S.C. § 1229a(c)(7). Before an IJ can grant a motion to reopen, the petitioner must show that the new evidence was previously unavailable and that it could not have been presented at the former hearing. See 8 C.F.R. § 1003.2(c)(1). However, granting a motion to reopen does not guarantee that the relief sought will be granted, only that the previously unavailable evidence will be considered. See id.

The United States Supreme Court has said that motions to reopen are most analogous to Rule 60(b) motions under the Federal Rules of Civil Procedure. Stone v. I.N.S., 514 U.S. 386, 401 (1995) ("The closest analogy to the INS' discretionary petition for agency reconsideration is the motion for relief from judgment under

7

Rule of Civil Procedure 60(b)."); see also Bronisz, 378 F.3d at 636. While not addressing motions to reopen in the context of removal proceedings, this Circuit has held that granting a Rule 60(b) motion reopens the earlier civil proceeding and vacates the underlying judgment. See Fobian v. Storage Tech. Corp., 164 F.3d 887, 890 (4th Cir. 1999) ("When a district court grants a 60(b) motion, it must necessarily vacate the underlying judgment and reopen the record."). However, granting a motion to reopen does not undo the *consequences* of a prior violation of that judgment order. See DaCosta, 449 F.3d 50-51. Therefore, even though granting a motion to reopen has the legal effect of vacating a prior voluntary departure order, it does not "retroactively nullify" the consequences of a prior violation of a then valid voluntary departure order. See id.

Policy considerations also justify this holding. Voluntary departure "reveals Congress'[s] intention to offer an alien a specific benefit - exemption from the ordinary bars on subsequent relief - in return for a quick departure at no cost to the government." Ngarurih v. Ashcroft, 371 F.3d 182, 194 (4th Cir. 2004). "But if the alien does not depart promptly, so that the [government] becomes involved in further and more costly procedures by his attempts to continue his illegal stay here, the original benefit to the [government] is lost." Banda-Ortiz, 445 F.3d at 390

8

(quoting Ballenilla-Gonzalez v. I.N.S., 546 F.2d 515, 521 (2d. Cir. 1976)).

Further, if we held that granting a motion to reopen nullifies the effects of a prior violation of a voluntary departure order, we would put persons who violated their departure orders at a procedural advantage over those who complied with the terms of their orders. That is because a person who complies with a voluntary departure order forfeits the right to file a motion to reopen. See 8 C.F.R. § 1003.2(d) (stating that a person must be present in the United States to file a motion to reopen). If we held that granting a motion to reopen retroactively nullifies a prior violation of a voluntary departure order, it would create incentives for persons *not* to comply with their voluntary departure orders. Such an interpretation would be contrary to the statutory purpose of voluntary departure - to allow a quick departure at no cost to the government. See Ngarurih, 371 F.3d at 194. For these reasons, the BIA properly found that § 1229c(d) statutorily barred Odogwu from adjustment of status.

B.

Odogwu's remaining arguments are without merit. Odogwu argues that because the government failed to oppose the IJ's decision to reopen Odogwu's removal proceedings, the matter should have

proceeded on the merits of Odogwu's adjustment of status application.[6]

Odogwu's argument is unconvincing. The government's failure to oppose the IJ's order reopening Odogwu's case does not mean that it abandoned its right to present legal arguments against Odogwu's application for adjustment of status. See DaCosta, 449 F.3d at 51 ("Although the [government] did not oppose the motion to reopen, the [government] did not waive its right to present an argument against [petitioner's] request for adjustment of status . . . ."). Regardless of whether the IJ correctly granted the motion to reopen, once Odogwu abandoned his asylum request, he was statutorily ineligible for the only remaining form of relief sought - adjustment of status. See id. at 51. Further proceedings would have been futile, and the government was within its right to move to have Odogwu's case pretermitted.

Also, permitting Odogwu to proceed with his adjustment of status application after withdrawing his asylum claim would have allowed Odogwu to circumvent the time limits imposed on motions to reopen. Because Odogwu filed his motion to reopen more than ninety

_____

[6]Odogwu also argues that the government's motion to pretermit is actually an untimely motion to reconsider an IJ's order. Odogwu is incorrect. Motions to reconsider can only be filed after entry of a final administrative order of removal. 8 U.S.C. § 1229a(c)(6)(B). The order granting a motion to reopen is an interlocutory order, not a final order of removal. See In re M-S-, 22 I. & N. Dec. 349, 354 (BIA 1998). Therefore, the government could not have filed a motion to reconsider the IJ's order granting Odogwu's motion to reopen.

days after a final order of removal had been entered against him, he had to satisfy one of the statutory exceptions to the ninety-day limit. See 8 U.S.C. § 1229a(c)(7)(C)(I). Odogwu claimed eligibility for asylum, one of the statutory exceptions, and the IJ granted the motion to reopen based on this asylum claim. See id. at § 1229a(c)(7)(C)(ii). However, once the IJ granted his motion to reopen, Odogwu abandoned his asylum petition and chose to proceed solely on his application for adjustment of status based upon his marriage to a United States citizen. Had Odogwu originally filed his motion to reopen on the basis of his recent marriage to a United States citizen, it would have been denied as untimely for failure to meet one of the statutory exceptions to the ninety-day limit. See id. at §§ 1229a(c)(7)(C)(i)-(iv). If we allowed Odogwu to proceed with his adjustment of status application after he withdrew the only basis for having his case reopened more than ninety days after a final order of removal had been entered against him, we would create an unintended and unnecessary loophole to the time limits Congress imposed on motions to reopen. Therefore, the BIA properly granted the government's motion to pretermit.

IV.

For the foregoing reasons, we deny the petition for review and affirm the ruling of the Board of Immigration Appeals.

<u>AFFIRMED</u>